**Michael OTTO, Sr., Plaintiff-Appellee,**

v.

**John R. BLOCK, Secretary of Agriculture of the United States of America, Defendant-Appellant.**

No. 81–2232.

United States Court of Appeals,
Fifth Circuit.

Dec. 13, 1982.

M. Lawrence Wells, Asst. U.S. Atty., Litigation Div., U.S. Dept. of Agriculture, Tyler, Tex., Raymond W. Fullerton, Asst. Gen. Counsel, Judith A. Wenker, Atty., James Michael Kelly, Associate Gen. Counsel, U.S. Dept. of Agriculture, Washington, D.C., for defendant-appellant.

Robert E. Barron, John Stevens, Port Arthur, Tex., for plaintiff-appellee.

Before BROWN, RUBIN and REAVLEY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

In November of 1978, the Food and Nutrition Service (FNS), an agency of the United States Department of Agriculture, disqualified Mike's Food Store (Mike's), in Port Arthur, Texas, from participation in the Food Stamp Program for one year. This order followed an investigation during which Mike's was caught red-handed accepting food stamps as payment for ineligible items.[1] After an unsuccessful adminis-

---

1. Food stamps may be used only to purchase "food," as defined by statute. 7 U.S.C. § 2012(g) (Supp.1982) in pertinent part, defines "food" as "(1) any food or food product for

trative appeal, Michael Otto, Sr., the owner of Mike's, filed suit in United States District Court pursuant to 7 U.S.C. § 2023 (Supp.1982), seeking review of the agency's action. The magistrate [2] overturned the agency's ruling and ordered the penalty reduced to a letter of warning. The issue before this Court is whether the magistrate erred in concluding that the agency's imposition of a one-year suspension was arbitrary and capricious. We reverse, and reinstate the agency's order.

Concerned about a high rate of food stamp redemption at Mike's Food Store, FNS commenced an investigation in June of 1978. This investigation was conducted according to standard FNS procedure by a full-time investigator, Stanley Massett, and a compliance aide, Frank Lin. The two men made six visits to Mike's. Before each visit, Massett instructed Lin as to what sorts of items could and could not be bought with food stamps. Massett took all Lin's cash from him and gave him a number of food stamps of various denominations. After his first visit, during which he bought only food, Lin each time attempted to use his coupons to purchase a mixture of eligible and ineligible items. On each of his last three visits, these purchases included either tobacco or alcohol, "major non-grocery type ineligible items" under FNS guidelines.[3] On every visit he was completely successful. Not once was he rebuffed or even questioned in his attempts.[4]

No one denies that these violations occurred. We must determine, however, whether they were serious enough to warrant the sanction levied by the agency.

To make that determination, we begin with 7 U.S.C. § 2023 (Supp.1982), which authorizes and sets the standard for district court review of FNS orders. Section 2023 provides that such a suit for review "shall be a trial *de novo* by the court in which the court shall determine the validity of the questioned administrative action in issue." In *Goodman v. United States,* 518 F.2d 505 (5th Cir.1975), this Court decided that the court could review the propriety of the sanction as well as the question of whether the violations actually took place. We also decreed the permissible scope of that review.

> To be 'valid,' a sanction must not be arbitrary and capricious, and a sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact.

518 F.2d at 511, *quoting Cross v. United States,* 512 F.2d 1212, 1218 (4th Cir.1975) (en banc).

In *Bruno's, Inc. v. United States,* 624 F.2d 592 (5th Cir.1980), we looked to the relevant FNS internal guidelines in applying the *Goodman* standard. We found that FNS had not followed those guidelines in deciding how severely to chasten Bruno's Food

---

home consumption except alcoholic beverages, tobacco, and hot foods or hot food products ready for immediate consumption..."

**2.** By consent of the parties, the case was tried before the United States Magistrate.

**3.** FNS Instruction 744–9 III(A)(4)(a) divides ineligible items into three categories:

(1) *Marginal Ineligible Items* are items which can easily be mistaken for eligible items and sold for coupons through oversight.
EXAMPLES: Canned pet food or imported food products.
(2) *Common Grocery Type Ineligible Items* are easily identifiable ineligible items of low cost.
EXAMPLES: Cleaning products such as soap, or paper products such as toilet tissue.

(3) *Major Non-Grocery Type Ineligible Items* are alcoholic beverages and easily identifiable ineligible items of high cost.
EXAMPLES: Clothing, home furnishings, hardware, cartons of cigarettes, or alcoholic beverages.

**4.** We list below the ineligible items which Lin bought with food stamps on his last five visits to the store:
*6/22/78:* Paper plates, work gloves, wax paper, dishwashing liquid, petroleum jelly, soap.
*6/27/78*\*: Liquid detergent, analgesic tablets, insect killer, shoe polish.
*7/17/78*\*: Paper plates, paper cups, household cleaner, one carton of cigarettes.
*7/22/78*\*: Dishwashing liquid, milk of magnesia, detergent, one six-pack of beer.
*7/28/78:* Liquid detergent, shoe polish, soap, one six-pack of beer.
\*Michael Otto personally made these sales.

Stamp Program violations. When the agency's action does adhere to the guidelines, however, the reviewing court may not overturn it as arbitrary and capricious.[5]

Under the federal regulations and the FNS guidelines, the agency may impose a one-year disqualification on a retailer who has been warned of his potential violations and who, as a matter of store policy, is selling alcohol or other major ineligible items in exchange for food stamps. In order to determine whether the retailer qualifies for this dubious honor, one must look to (i) the issuance of warnings by FNS; (ii) the type of merchandise sold; and (iii) whether the violations reflect store policy.[6]

Clearly, adequate formal warnings, or "compliance action," took place in this case.[7] In September of 1977, an FNS official visited Mike's Food Store, discussed with Michael Otto the store's high coupon redemption rate, and reviewed Food Stamp Program regulations. This visit was followed by a letter to Otto. The letter and a signed receipt of delivery are part of the record. The magistrate himself, moreover, found that FNS personnel had made compliance visits to the store.

Clearly, also, Mike's accepted food stamps for cigarettes and beer, the two quintessential "major non-grocery type" ineligible items.

Thus, we are left with the question of whether the acceptance of food stamps for these blatantly ineligible products was a matter of store policy. The magistrate found that it was not. After reviewing the evidence, we must conclude that this finding was clearly erroneous.

If the owner of the store is the person selling ineligible goods, it is only logical to assume that he is both making and acting out store policy. Indeed, the FNS guidelines so provide. "Substantial participation by the owner" may establish store policy. FNS Instruction 744–9 III(B)(4)(a). Although the magistrate concluded that Otto had not been involved in any of the illicit transactions, the record refutes that version of events.

At trial, Lin testified that Otto personally had sold him ineligible items on three of the five occasions. *See* note 4, *supra.* He identified Otto in court. Massett also pointed to Otto as the man he had identified and talked to immediately after Lin's sixth and final visit to the store. Otto did not deny that he had made the sales.[8]

The burden of proof here was on Otto, not on FNS. "In considering the determination of violation, the district court must uphold that finding as valid unless the storeowner can prove, by a preponderence

---

5. The guidelines conform to the relevant federal statutes and regulations. *See* 7 U.S.C. §§ 2013(c), 2021 (Supp.1982); 7 C.F.R. § 278.-6(e) (1982).

6. FNS Instruction 744–9 IV(B):
   *One-Year Disqualifications.* A one-year disqualification is normally the maximum period which will be assigned to a retailer not previously disqualified from the program. One-year disqualifications usually will be assigned in the following situations:
   1 The evidence clearly shows that the retailer, as a matter of store policy, is engaged in violations such as:
   a The discounting of coupons for cash, which may take the form of accepting coupons as repayment of cash loans with interest or other devices to exchange coupons for cash as a discount, or
   b The sale of ineligible items such as alcoholic beverages and other major non-grocery type items.
   \* \* \* \* \* \*

7. FNS Instruction 744–9 III (c)(2) defines compliance action as "any action taken to confront the retailer with the possibility that violations are being committed in his store and cautioning him against further violations."

8. Q. Mr. Otto, I understand what you're saying, but I believe you heard Mr. Lin testify on two occasions he bought the food from your clerk—
   A. Steve.
   Q. Yes, Steve, and on three occasions he purchased direct from you, and identified you as such.
   Do you have any recollection of that?
   A. No, sir.
   Q. Are you denying that it happened, sir?
   A. No, sir, I'm not saying that; I have no recollection of it.
   Q. You could have possibly sold non-food items for food stamps?
   A. I don't deny it; I just don't recollect it.

of evidence, that the agency's determination is factually incorrect." *Goodman, supra,* at 511. Otto did not refute the agency's finding that he personally sold major ineligible items to Lin.

Even were the burden on the agency, however, our result would be the same. The magistrate elected not to believe Lin's testimony and ruled accordingly. While normally this Court will respect the trial court's evaluations of witnesses' credibility, the record makes it transparently clear that the magistrate disbelieved Lin simply because Lin was a citizen of Taiwan and was attending graduate school on a United States government scholarship. Those innocuous facts do not support the conclusion that Lin's testimony was somehow "suspect".

Store policy is thus established by Otto's participation. Store policy can also be inferred from

> A combination of violative evidence and previous compliance action which shows that consistent violations continued despite a reasonable attempt by FNS personnel to correct the situation by making the owner or management aware that violations were probably occurring in the store. . . .

FNS Instruction 744–9 III(B)(4)(d).

On either theory, the evidence shows that it was a policy of Mike's Food Store to sell major ineligible items for food stamps. Thus the one-year disqualification was not arbitrary and capricious, and the magistrate erred in ruling to the contrary.

Two other points deserve mention. The magistrate found, as a factual matter, that FNS considered rumors of coupon discounting[9] in deciding upon Mike's sanction, and thus stepped outside the record. In *Bruno's, Inc., supra,* such behavior on the part of the agency was cause for this Court to uphold the reduction of the FNS sanction. We point out two very substantial differences between this case and *Bruno's,* however. In *Bruno's,* the proven violations were not by themselves severe enough to warrant the 60-day suspension imposed. Here, all talk of coupon discounting aside, Mike's violations were serious enough to justify a one-year disqualification. The agency could levy such a penalty, within the guidelines, without having to rely on matters outside the record.

In *Bruno's,* moreover, we determined that FNS really did consider matters outside the record. In this case, however, the agency relied upon Mike's high redemption rate, rumors of discounting, and rumors of violations only in deciding to *investigate* Mike's.[10] This it may properly do. It then ascertained the facts and proved them in the traditional manner.

Finally, we discuss very briefly the magistrate's finding that the investigation "was made in a manner that could be described, if this were a criminal investigation, as an entrapment." The investigative technique used here does not even begin remotely to resemble entrapment. Before the investigation, Michael Otto was plainly told the rules and regulations of the Food Stamp Program. He admittedly knew those rules. Never once did Lin attempt to persuade, cajole, or badger Otto or his employees into selling him ineligible items. Otto and his employees were perfectly free to accept or reject the food stamps. They freely chose to accept them.

The agency's choice of sanction was neither unwarranted in law nor unjustified in fact. The magistrate erred in ruling it to have been arbitrary and capricious.

REVERSED.

---

**9.** Coupon discounting is the payment of cash, at less than face value, for food stamps.

**10.** Joseph Turecky, the FNS official responsible for recommending the penalty, consistently testified that the decision was based solely upon the investigative report and the fact that there had been previous compliance action.