**Lena Parolli HOUGH, d/b/a Easy Way Grocery, Clarksdale, MS, Plaintiff-Appellant,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, L.C. Ellis, Officer in Charge of Food and Nutrition Service, Greenwood, Louis R. Mathis, Chief-Retailer Wholesaler Section, Edward W. Davidson, et al., Defendants-Appellees.**

No. 82–4530

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 24, 1983.

M. Lee Graves, Clarksdale, Miss., for plaintiff-appellant.

Glen H. Davidson, U.S. Atty., Falton O. Mason, Jr., Asst. U.S. Atty., Oxford, Miss., for defendants-appellees.

Before GEE, RANDALL and TATE, Circuit Judges.

PER CURIAM:

This retail store food stamp disqualification case comes to us from the Northern District of Mississippi after the district court's de novo review of the administrative

proceedings before the Food and Nutrition Service of the United States Department of Agriculture. *See* 7 U.S.C. § 2023 (Supp.IV 1980) (subsequently amended in 1981 and 1982). We find that the district court's determination that Lena Parolli Hough, doing business as the Easy Way Grocery, violated the Food Stamp Act and the regulations thereunder is not clearly erroneous. We also find that Hough's three-year suspension from participation in the food stamp program is neither arbitrary nor capricious.

Hough and the Easy Way Grocery have had trouble with the food stamp authorities almost since the day they joined the program in 1965. According to the FNS's final review letter, dated January 25, 1980, field agents visited the store fourteen times between 1966 and 1977. At least six of these visits resulted in official warnings that continued violations of the food stamp regulations could result in suspension from the program. Apparently because the warnings went largely unheeded, the store was prohibited from redeeming food stamps for one year beginning October 9, 1974. Hough and the Easy Way Grocery rejoined the program in 1975, but her troubles continued virtually unabated. Seven further visits to the store culminated in a letter, dated March 23, 1978, acknowledging Hough's repeated denials that any violations had taken place, but warning her nonetheless that any further evidence of the store's noncompliance with the regulations would result in another disqualification.

This time the FNS followed up its warning with an official investigation. Such an investigation apparently involves, as it did here, undercover visits by a food stamp compliance officer who attempts to buy beer, cigarettes, detergent, and similar nonfood items with foodstamps. According to a detailed series of forms—with item-by-item lists of various purchases—Compliance Officer Willie Thomas or his assistant, Willie Small, made five separate undercover visits to the store between November 3, 1978, and January 30, 1979. During these visits, they purchased, among other items, a large variety of soaps, detergents and disin-

fectants, two six-packs and several individual bottles of beer, and an entire carton of "Kool" cigarettes. Hough vigorously denied that any of these purchases had taken place, and asserted that it had been and continued to be her policy never to sell ineligible items in exchange for foodstamps. The FNS chose to disbelieve Hough's protestations of innocence and notified her on June 8, 1979, that she was suspended for three years from further participation in the program. Hough duly took an administrative appeal, but the FNS affirmed its original determination on January 25, 1980.

Pursuant to section 14 of the Food Stamp Act of 1977, 7 U.S.C. § 2023 (Supp.IV 1980) (unamended version), Hough timely filed a petition in federal court for "a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023. The court held the requisite de novo trial on November 19, 1982, and rendered its opinion from the bench. The court held, first, that in the trial de novo, Hough "failed to prevail on the evidence" in her attempt to show that the violations had not taken place, and second, that the three-year penalty imposed on her store was neither arbitrary nor capricious. Hough now appeals from both of these determinations.

A district court reviewing the FNS's disqualification of a store holds a trial de novo, and is therefore free to reject or accept the government's account as it sees fit. 7 U.S.C. § 2023. We, however, are not so free. We may not overturn the district court's findings unless we determine that they are "clearly erroneous" within the generally accepted meaning of rule 52(a) of the Federal Rules of Civil Procedure. *Goodman v. United States,* 518 F.2d 505, 507 (5th Cir.1975).

█  After carefully reviewing both the documentary record and the 164-page trial transcript in this case, we cannot say that the trial court was clearly erroneous in concluding that Hough had not carried her burden of showing, by a preponderance of the evidence, that she did not violate the

Food Stamp Act. *See Goodman, supra,* 518 F.2d at 507 (administrative defendant must carry burden of proof in district court). Hough may indeed run a grocery store that has been in operation so long that it has become a "local institution;" the poor, elderly, and predominantly black residents in the surrounding community quite possibly will regret the store's inability to accept food stamps for the next three years; and the several customers who testified that Hough "never" accepts foodstamps in payment for ineligible items may well have been telling the truth as they perceived it. But all of that is irrelevant here. What is relevant is that the trial court thought that the government's case was more believable than Hough's. Thomas and Small listed each of the eighty-three items they purchased from Hough by name. Twenty-eight of those purchases were ineligible, non-food items. According to Thomas, Hough knew, in fact, that she was under investigation and that the FNS was contemplating sending undercover agents to her store:

> [Hough] asked me where did I live, and she wanted to know whether or not I was a pigeon [from the FNS] trying to get

her into trouble. I told her no, and at the time she was asking me questions she was steadily adding the [partly ineligible] items up.

2 Record at 126. The head of the local FNS field office, L.C. Ellis, testified at length about the problems the agency had had with Hough and about the many visits his staff had made to the store in an effort to persuade Hough to comply with the regulations. All of this evidence—supported with memoranda, letters, and other documents—appears in no way less intrinsically believable than Hough's evidence. The district court was entitled to credit it, and, having done so, may not be reversed on appeal unless we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We are left with no such conviction, and so affirm the district court's finding of liability.

■ We also affirm the district court's refusal to shorten the three-year suspension to, as Hough suggested at trial, six months. Although it is not entirely clear that the federal courts still have the power to review disqualification sanctions,[1] that problem is

---

1. Under section 13 of the Food Stamp Act of 1964, Pub.L. No. 88–525, § 13, 78 Stat. 703, 707–08 (codified at 7 U.S.C. § 2022 and superseded in 1977), courts in this circuit unquestionably had the power to review the FNS's disqualification penalties. *Goodman, supra.* The drafters of the superseding Food Stamp Act of 1977, however, expressly stated that they meant to overrule *Goodman,* so that the actual length of the disqualification imposed would not be reviewable at all by any court, state or federal:

> The Committee wants to go on record as noting that, when there is imposition of disqualification for such period of time as may be determined in accordance with regulations (and the regulations permit disqualification for a reasonable period up to three years) pursuant to section 12 of the bill, the Committee does not intend that, in the trial de novo in the United States district court or state court of the final administrative determination of disqualification, the sanction or period of disqualification imposed would itself be subject to judicial review as several courts have held that it is. See *Goodman v. United States,* 518 F.2d 505 (5th Cir.1975) and *Cross v. United States,* 512 F.2d 1212

(4th Cir.1975) (en banc). But see *Martin v. United States,* 459 F.2d 300 (6th Cir.), *cert. denied,* 409 U.S. 878, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972) and *Save More of Gary, Inc.,* 442 F.2d 36 (7th Cir.), *cert. dismissed,* 404 U.S. 987, 92 S.Ct. 535, 30 L.Ed.2d 549 (1971). The trial de novo as set forth in section 14 should be limited to a determination of the validity of the administrative action, but not of the severity of the sanction. Review of the factual determination that a violation occurred is normal grist for the courts; review of the length of [a] highly discretionary ... sentence of disqualification is not.

H.R.Rep. No. 464, 95th Cong., 1st Sess. 397–98, *reprinted in* 1977 U.S.Code Cong. & Ad.News 1978, 2326–27. What Congress intended to do is thus plain enough, but what it actually did do is another matter entirely. Sections 12 and 14 of the bill accompanying the above-quoted report—which were enacted into law virtually without change as sections 12 and 14 of the Act—reenact the 1964 provisions without, for our purposes, making any changes at all. *Compare* Food Stamp Act of 1964, Pub.L. No. 88–525, §§ 11, 13, 78 Stat. 703, 707–08, *with* H.R. 7940, 95th Cong., 1st Sess. §§ 12, 14, 123 Cong.Rec. 25,469–70 (1977), *and* Food Stamp

irrelevant here because we find that the three-year sanction is, in any event, neither arbitrary nor capricious. *Goodman, supra,* 518 F.2d at 511 (quoting *Cross v. United States,* 512 F.2d 1212, 1218 (4th Cir.1975) (en banc)) (establishing the standard of review). *See also Otto v. Block,* 693 F.2d 472, 473 (5th Cir.1982) (implicit holding that *Goodman* survives the amendments made by the Food Stamp Act of 1977).

Section 12 of the Food Stamp Act of 1977, 7 U.S.C. § 2021 (Supp.IV 1980) (superseded 1982), authorized the Secretary, in an appropriate case, to disqualify a store "for such period of time as may be determined in accordance with regulations issued pursuant to this chapter." The regulations, in turn, provided for various penalties ranging from a three-year suspension to the mere sending of a warning letter. 7 C.F.R. § 278.6 (1979) (superseded). The specific provision applicable here indicated that Hough could properly have expected at least a one-year suspension:

> The FNS regional office shall ... [d]isqualify the firm for 1 year if ... [t]he evidence shows that ... [i]t is the firm's policy to sell expensive or conspicuous nonfood items, cartons of cigarettes, or

alcoholic beverages, in exchange for food coupons, and the firm has engaged in such practices.

7 C.F.R. § 278.6(e)(2) (subparagraphing deleted). The FNS's unpublished interpretative guidelines further explained that the one-year sanction was appropriate if:

> 1. The evidence clearly shows that the retailer, as a matter of store policy, is engaged in violations such as:
>
> . . . .
>
> b. The sale of ineligible items such as alcoholic beverages and other major non-grocery type items[; or]
>
> 2. FNS personnel have taken significant compliance action to prevent violations, and the evidence clearly shows that the retailer is engaged in violations such as:
>
> a. To a limited extent, the types of violations listed [in subsection 1], or
>
> b. Any violations which show a deliberate and widespread disregard for program regulations.

Food Stamp Division, Food and Nutrition Service, United States Department of Agriculture, Instruction 744–9, § IV(B) (Mar. 13, 1970).[2] Because the record shows that

---

Act of 1977, Pub.L. No. 95–113, §§ 12, 14, 91 Stat. 958, 974–75 (codified at 7 U.S.C. §§ 2021, 2023, and amended in 1981 and 1982). The intent to overrule *Goodman* stated in the legislative history, in other words, seems not to have found expression in the statute itself.

The Fifth Circuit has already implicitly held, in any event, that the "arbitrary and capricious" standard established in *Goodman* survives the 1977 amendments. *See Otto, supra,* 693 F.2d at 473. The only court of appeals to have considered the problem directly states that the difference between *Goodman*'s "arbitrary and capricious" standard and the congressional report's no-review-at-all standard is largely one of form, not substance, since "[a]n agency's choice of sanction is not to be overturned unless the reviewing court determines it is ' "unwarranted in law ... or without justification in fact." ' " *Kulkin v. Bergland,* 626 F.2d 181, 184–86 & nn. 4, 7, 8, 10 (1st Cir.1980) (citations omitted).

**2.** Section III(B)(4) of the instructions defined "store policy," and was quoted in full in *Willy's Grocery v. United States,* 656 F.2d 24, 26–27 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1011, 71 L.Ed.2d 301 (1982). "Major non-grocery type ineligible items" were defined in

section III(A)(4)(a), which was quoted in full in *Bruno's, Inc. v. United States,* 624 F.2d 592, 595 n. 5 (5th Cir.1980). "Significant compliance action" was defined as follows:

> Normally, all of the following factors must be present before compliance action will be considered *significant* and thereby make a difference in the final determination:
>
> a. There was a compliance store visit during which the retailer was confronted with the possibility of violations in the store, questioned about his understanding of the regulations, and cautioned;
>
> b. A confirming or warning letter was sent as a followup to the visit; and
>
> c. The action was taken not more than three years prior to the actual investigation, *or,* if the action was aimed primarily at technical violations such as the acceptance of loose $2 coupons, not more than one year prior to the actual investigation.

Instruction 744–9, *supra,* § III(C)(2) (emphasis in original). The last follow-up warning letter was sent on March 23, 1978. 1 Record at 66 (full text of letter). The record supports the FNS's conclusion that it was Hough's policy to accept foodstamps for the purchase of major,

these more detailed considerations—as well as those in the published regulations—were present here and were directly considered both by the FNS officer charged with imposing the sanction, 1 Record at 50, and by the officer charged with reviewing its appropriateness, 1 Record at 10–14, we conclude that the FNS would have acted neither arbitrarily nor capriciously if it had given Hough merely a one-year suspension.

We also conclude that the FNS acted neither arbitrarily nor capriciously in extending the one-year penalty to three years. The regulations clearly authorized (in an appropriate case) a suspension of up to three years, and stated that "[t]he FNS regional office may assign a penalty that is more severe than the penalty normally warranted by the evidence of violations if the same firm has been previously disqualified." 7 C.F.R. § 278.6(a), (f). The interpretative guidelines further stated that "[n]ormally, previous periods of disqualification resulting from earlier ... investigations will result in stronger final determinations." Instruction 744–9, *supra*, § III(C)(3). "A three-year disqualification," in other words, was usually "assigned to a retailer who ha[d] been previously disqualified from the program for a substantial period and who ha[d] been reinvestigated and found to be violating the program seriously again." *Id.* § IV(A)(1). The evidence of violations warranted a one-year disqualification; Hough's store had been disqualified before; and the next-longer disqualification period was three years. In a word, Hough was a second offender, and the FNS acted neither arbitrarily nor capriciously in taking that fact into account.[3]

The judgment of the district court finding liability under the Act and confirming

the three-year penalty imposed by the Food and Nutrition Service of the Department of Agriculture is therefore AFFIRMED.

---

non-grocery type items, that previous compliance actions had been substantial, and that "[t]he violations were a result of total disregard for program regulations by the owner." 1 Record at 50.

**3.** Indeed, Hough is fortunate that the FNS did not postpone taking formal action against her for any longer than it did. The Food Stamp Act Amendments of 1982, Pub.L. No. 97–253, § 175, 96 Stat. 763, 781 (to be codified at 7

U.S.C. § 2021), increased the maximum suspension for second offenders from three to ten years. The Senate report accompanying the Amendments expressed considerable "concern[ ] [about] the reported violations of the Food Stamp Act by retail stores," and especially about the problem of "repeat offenders." S.Rep. No. 504, 97th Cong., 2d Sess. 62–66 (1982), *reprinted in* U.S.Code Cong. & Ad.News 1641, 1700–04 (paper ed. Oct. 1982).