Juan Francisco RAMIREZ and Jovita G. Ramirez, Plaintiffs-Appellees,

v.

SECRETARY OF AGRICULTURE and United States of America, Defendants-Appellants.

No. 82–1416.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1983.

Barbara L. Herwig, Civ. Div., Appellate Staff, Dept. of Justice, Aaron B. Kahn, Raymond W. Fullerton, Attys., Office of Gen. Counsel, Washington, D.C., for defendants-appellants.

George A. McAlmon, Raymond C. Caballero, El Paso, Tex., for plaintiffs-appellees.

Before INGRAHAM, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The Secretary of Agriculture appeals from a judgment of the district court overturning the Food and Nutrition Service's decision to disqualify an El Paso, Texas grocery store from participating in the food stamp program for six months. Finding that the district court erred in concluding that the agency's sanction was arbitrary and capricious and in then substituting a shorter disqualification period and a civil penalty, we reverse and reinstate the agency's order.

Concerned about a high rate of food stamp redemption at Kiko's Meat Market, FNS field agents met in August, 1978 with the store's owner, Juan Francisco Ramirez, and his son, Frank, to explain the food stamp program and to warn about possible violations. The agents then sent a letter to Ramirez confirming the visit. Because Kiko's redemption rate continued to be high, the agency decided in early 1979 to conduct an on-sight investigation of food stamp practices at Kiko's. Such an investigation involves, as it did here, several visits by a compliance aide, who, under instruction from an FNS compliance specialist, attempts to buy beer, cigarettes, and other ineligible items with food stamps. Between May 9, 1979 and June 15, 1979, the compliance aide paid nine such visits to Kiko's. According to a series of detailed forms filled out by the compliance specialist, the aide exchanged food stamps for ineligible items or for cash on eight occasions, six involving Juan Francisco Ramirez. On four occasions, Ramirez accepted food stamps for ineligible items that included either six-packs of beer or cartons of cigarettes, which are classified as "major non-grocery type ineligible items" under FNS internal guidelines. *See* FNS Instruction 744–9 III(A)(2)(a) (Dec. 31, 1980).

Following the investigation, the FNS sent Ramirez a letter informing him of the investigation, its results, and his right to respond. In a reply letter, Ramirez and his son did not deny that violations had occurred but alleged that they either were accidental or resulted because of threats from customers. The FNS chose to disbelieve these contentions and notified Ramirez on February 13, 1980 that it had decided to disqualify Kiko's from participating in the food stamp program for one year. Following administrative review of this determination, the Food Stamp Review Officer affirmed the finding of a violation but reduced the disqualification period from one year to six months because the requisite warning letter was technically deficient. The Review Officer also declined to substitute a civil money penalty for the disqualification because he found no "hardship to food stamp households" as required by the regulations. 7 C.F.R. § 278.6(g) (1982).

Ramirez then filed suit in state court pursuant to 7 U.S.C. § 2023 (Supp. IV 1980) seeking review of the agency's action. The case was removed to federal district court, which held the requisite trial de novo. At

trial, Ramirez did not challenge the agency's finding of a violation; he instead focused entirely on the agency's choice of sanction. The district court ruled that the six month disqualification period imposed by the FNS was "arbitrary and capricious" because: (1) "hardship will result to food stamp households"; and (2) "[t]he Secretary considered [Kiko's] high rate of food stamp redemption in determining the six-month qualification period." Accordingly, the court reduced the disqualification period to sixty days and added a civil penalty of $2500. Ramirez does not now challenge the finding of a violation. The Secretary appeals, however, and seeks reinstatement of the six month disqualification period.

The Secretary first challenges the district court's authority to review the sanction imposed. Though noting that the legislative history of the 1977 amendment to the Food Stamp Act casts doubt on a court's power to review the length of a disqualification sanction,[1] he concedes that we are bound by post-1977 decisions of this court that have reviewed the severity of disqualification sanctions under the "arbitrary and capricious" standard. *See Otto v. Block,* 693 F.2d 472, 473 (5th Cir.1982); *Bruno's, Inc. v. United States,* 624 F.2d 592, 593 (5th Cir. 1980). Instead, he argues that *Otto* and *Bruno's* say nothing about a court's power to review the agency's *choice* between a disqualification sanction and a civil penalty and that Congress has committed this choice to the agency. While we agree that this court never has resolved this issue, we need not do so here because we find that, in any event, the district court erred in finding the six month sanction to be arbitrary and capricious and in substituting a shorter sanction and a civil penalty.

To determine whether the six month sanction is "unwarranted in law or without justification in fact" and therefore arbitrary and capricious, *see Goodman v. United States,* 518 F.2d 505, 511 (5th Cir.1975), we

---

1. In *Goodman v. United States,* 518 F.2d 505 (5th Cir.1975), we analyzed section 13 of the Food Stamp Act of 1964, Pub.L. No. 88–525, § 13, 78 Stat. 703, 707–08 (codified at 7 U.S.C. § 2022) and determined that courts have the power to review the FNS's disqualification sanction. Nevertheless, the drafters of the 1977 amendments to the Food Stamp Act expressly stated that they intended to reject *Goodman's* approach in favor of a no-review standard:

> The Committee wants to go on record as noting that, when there is imposition of disqualification for such period of time as may be determined in accordance with regulations (and the regulations permit disqualification for a reasonable period up to three years) pursuant to section 12 of the bill, the Committee does not intend that, in the trial de novo in the United States district court or state court of the final administrative determination of disqualification, the sanction or period of disqualification imposed would itself be subject to judicial review as several courts have held that it is. *See Goodman v. United States,* 518 F.2d 505 (5th Cir.1975) and *Cross v. United States,* 512 F.2d 1212 (4th Cir.1975) (en banc). But see *Martin v. United States,* 459 F.2d 300 (6th Cir.), *cert. denied,* 409 U.S. 878, 93 S.Ct. 129, 34 L.Ed. 131 (1972) and *Save More of Gary, Inc.,* 442 F.2d 36 (7th Cir.), *cert. dismissed,* 404 U.S. 987, 92 S.Ct. 535, 30 L.Ed.2d 549 (1971). The trial de novo as set forth in section 14 should be limited to a determination of the validity of the administrative action, but not of the

severity of the sanction. Review of the factual determination that a violation occurred is normal grist for the courts; review of the length of [a] highly discretionary ... sentence of disqualification is not.

H.R.Rep. No. 464, 95th Cong., 1st Sess. 397–98, reprinted in 1977 U.S.Code Cong. & Ad.News 1704, 1978, 2326–27.

Whatever its "intent" to overrule *Goodman,* Congress did not follow through by changing the wording of the statute interpreted by *Goodman.* As we recently noted in *Hough v. United States Dept. of Agriculture,* 707 F.2d 866, 868 n. 1 (5th Cir.1983):

> What Congress intended to do is thus plain enough, but what it actually did do is another matter entirely. Sections 12 and 14 of the bill accompanying the above-quoted report— which were enacted into law virtually without change as sections 12 and 14 of the Act—reenact the 1964 provisions without, for our purposes, making any changes at all. *Compare* Food Stamp Act of 1964, Pub.L. No. 88–525, §§ 11, 13, 78 Stat. 703, 707–08, *with* H.R. 7940, 95th Cong. 1st sess. §§ 12, 14, 123 Cong.Rec. 25,469–70 (1977), *and* Food Stamp Act of 1977, Pub.L. No. 95–113, §§ 12, 14, 91 Stat. 958, 975–75 (codified at 7 U.S.C. §§ 2021, 2023, and amended in 1981 and 1982). The intent to overrule *Goodman* stated in the legislative history, in other words, seems not to have found expression in the statute itself.

begin with 7 U.S.C. § 2021 (Supp. IV 1980) (superceded 1982), which authorizes the Secretary, in an appropriate case, to disqualify a firm "for such period of time as may be determined in accordance with regulations issued pursuant to this chapter." In imposing a six month suspension on Kiko's, the Review Officer expressly relied on 7 C.F.R. § 278.6(e)(3)(ii) (1982) (superceded 1983). This section authorizes a six month sanction if the firm has not received adequate warnings but has nonetheless committed violations that would warrant the imposition of a one year disqualification if warnings had been given. *See also* FNS Instruction 744–9 IV(C)(2). To warrant the one year, and *a fortiori* the six month sanction, the evidence must show that "[i]t is the firm's policy to sell expensive or conspicious non-food items, cartons of cigarettes, or alcoholic beverages, in exchange for food coupons, and the firm has engaged in such practices." 7 C.F.R. § 278.6(e)(2)(i)(A).

■ There is no question in this case but that on three or more occasions personnel of Kiko's accepted food stamps for six-packs of beer or cartons of cigarettes, conduct forbidden by FNS Instruction 744–9 IV(B)(1)(a). The record also supports the FNS's conclusion that it was Kiko's "policy" to accept food stamps for these items. It may be true, as Ramirez argues, that he was uneducated, that he felt threatened by customers, and that his son, the store's general manager, did not accept food stamps for ineligible items. These facts might inform initial agency discretion in its investigative pursuits but they do not mandate a toleration of violation because the FNS guidelines provide that at least four clearly violative sales of ineligible items by an owner or a close relative involved in the store's operation may establish "store policy." FNS Instruction 744–9 III(B)(1)(a). It is undisputed that Juan Ramirez made such violative sales and that he was an owner of Kiko's. The record thus shows, and the

district court made no contrary finding, that Kiko's had a "policy" of selling beer or cigarettes for food stamps. We are unable to conclude that the FNS acted arbitrarily or capriciously in disqualifying Kiko's for six months, however we may have proceeded as persons charged with the enforcement task.

Although the evidence thus supports a six month sanction, the district court noted two reasons for reducing the sanction and adding a civil penalty. First, to support the reduction in sanction, the court found that the FNS considered Kiko's high rate of food stamp redemption in deciding to impose the six month sanction. The court then cited *Bruno's, Inc. v. United States,* 624 F.2d 592 (5th Cir.1980), in which similar conduct by the FNS caused this court to uphold a reduction in the agency's sanction. Though the Secretary now urges that the agency did not use Kiko's redemption ratio as a factor in determining the penalty, we need not overturn the trial court's factual finding because we find that, in any event, *Bruno's* is distinguishable. In *Bruno's,* the unauthorized sales were not sufficient to support the sixty day suspension imposed by the FNS. The FNS, however, apparently relied on the store's high redemption ratio to determine the penalty. We therefore affirmed the district court's decision to reduce the sanction to a written warning. In contrast, even if the FNS here did consider Kiko's high redemption ratio, Kiko's unauthorized sales independently sustained the six month sanction.[2] The FNS could impose this penalty within the regulations and guidelines without having to rely on matters outside the record.

The district court also added a civil penalty of $2500 because it found that the six month sanction would impose a hardship on Kiko's food stamp customers. This remedy, however, is not sustainable. The regulations provide that the FNS may choose to

---

**2.** Ramirez argues that the FNS relied on Kiko's high redemption ratio to establish the "previous compliance action" required under the guidelines. As we have stated, however, the FNS chose the six month sanction under a section of the regulations and guidelines that requires no proof of previous compliance action. *See* 7 C.F.R. § 278.6(e)(3)(ii); FNS Instruction 744–9 IV(C)(2).

**154**

fine a firm rather than to disqualify it if "the firm subject to disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices." 7 C.F.R. § 278.6(g). The Review Officer found that Kiko's had not demonstrated this hardship because Barron's Superette was located only one-half block from Kiko's and carried a comparable selection of items at comparable prices. Neither the district court nor Ramirez disputed this finding but instead emphasized that "Kiko's presence in the area is necessary to maintain [a] competitive countervailing force for Barron's." Even if true, however, this finding will not carry the day because the regulations and guidelines focus only on whether the competitor *presently* is selling comparable items at comparable prices. Regardless, the civil penalty imposed by the district court cannot co-exist with the reduced disqualification sanction. Section 278.6(g) states that a civil penalty may be imposed only "in lieu" of disqualification. As such, the court erred in adding the civil penalty to the disqualification sanction.

For these reasons, we find that the district court erred in holding the agency's choice of sanction to be arbitrary and capricious. We are not unsympathetic to the able district court's on-the-scene tailoring of remedy to wrong. If Congress had given to it the discretion to achieve its result we would not interfere, for we do not say the result it struck for was unfair, only that it was not a permissible one. We therefore reinstate the agency's six month disqualification sanction.

REVERSED.