**L.E. TYER, d/b/a New Cash Store, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. DC 86–18–S–O.**

United States District Court,
N.D. Mississippi,
Delta Division.

Oct. 21, 1986.

Charles C. Jacobs, Jr., Jacobs, Eddins, Povall, Meador & Crump, Cleveland, Miss., for plaintiff.

Robert Q. Whitwell, U.S. Atty., John Marshall Alexander, Asst. U.S. Atty., Oxford, Miss., for defendant.

## MEMORANDUM OPINION

SENTER, Chief Judge.

This action arises out of plaintiff's complaint for judicial review of his three-year disqualification from participation in the food stamp program imposed by the United States Department of Agriculture, Food and Nutrition Service. Both parties have filed motions for summary judgment, each arguing that there is no genuine issue of material fact. Having reviewed the record in this case, including the affidavit and deposition of plaintiff, L.E. Tyer, Jr., and the affidavit of Berton Cogdill, the agency investigator, and being otherwise fully advised, the court finds that there is no genuine issue of material fact and that summary judgment should be granted in favor of defendant United States.

## I. FINDINGS OF FACT.

Plaintiff L.E. Tyer, Jr., owner of New Cash Store in Beulah, Mississippi, was authorized on August 22, 1968, under the name of New Cash Store to participate in the food stamp program administered by the United States Department of Agriculture, Food and Nutrition Service. Since that time, food stamp program personnel have visited the store regularly and advised plaintiff to avoid violations of the food stamp regulations. Many times they provided plaintiff with a copy of the food stamp regulations and, following the visit, would send plaintiff a letter again cautioning him about violations of food stamp regulations. Plaintiff understood the regulations, including the portion which provides for disqualification if a participant accepts food stamps in exchange for non-food items. Deposition of plaintiff, pp. 4–6. Plaintiff was also aware that the acceptance of food stamps in exchange for cigarettes is a more serious violation than an exchange for other non-food items. *Id.*, p. 6.

During March, 1985, the federal agency conducted an investigation of plaintiff's food stamp transactions. Berton Cogdill, an investigator for the Food and Nutrition Service, visited New Cash Store in Beulah on three or four separate occasions.[1] Cogdill states that he exchanged food coupons for sixteen ineligible items during his four visits. On his first alleged visit on March 14, 1985, Cogdill selected four eligible items and three ineligible items, the latter items consisting of one package of toilet tissue, one box of sandwich bags, and one box of soap pads. He allegedly offered, and plaintiff allegedly accepted, food coupons valued at $7.00. The description of the clerk is similar to the features of plaintiff. Plaintiff denies that this transaction occurred.

Plaintiff does not deny that Cogdill visited the store on March 19, March 22, and March 25, 1985. During those three visits, Cogdill selected a total of 26 items, 13 of which were ineligible items, including cigarettes, toilet tissue, soap pads, light bulbs, detergent, bleach, razors, and cleaner. In each instance, a man identified as L.E. Tyer, Jr., accepted food coupons tendered by the investigator in exchange for the items selected. During the three undisput-

1. Plaintiff adamantly argues that the investigator visited New Cash Store on only three occasions. Affidavit of plaintiff, ¶ 11; deposition of plaintiff, pp. 6–7. The agent states that he visited plaintiff's store on four occasions. Affidavit of Berton Cogdill. The court notes, too, that the itemization of facts relied upon in his request for summary judgment, ¶ 8, and the proposed findings and conclusions, ¶ 8, submitted by counsel for plaintiff indicate that four visits were made by the investigator. These documents have been filed with the clerk and are a part of the record in this action. In either event, it is undisputed that on at least three occasions food stamps were exchanged for ineligible items, including cigarettes. Accordingly, whether the investigator visited the store three or four times is not a material fact. *See Ramirez v. Secretary of Agriculture*, 712 F.2d 150, 153 (5th Cir.1983) (reviewing violations which occurred "on three or more occasions"); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. ——, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202, 211 (1986) (describing standard as to materiality); *Professional Managers, Inc. v. Fawer*, 799 F.2d 218, 222–23 (5th Cir.1986).

ed visits, the investigator used six $1.00 coupons, one $5.00 coupon, and four $10.00 coupons; he allegedly used two additional $1.00 coupons and one $5.00 coupon in the disputed March 14 visit. Prior to entering the store, agent Cogdill recorded the serial numbers of the food coupons he used in his investigation of plaintiff's store.

By letter dated June 26, 1985, plaintiff was notified by the Food and Nutrition Service of the violations that occurred at his store and that his store was being considered for disqualification from the food stamp program or the imposition of a civil money penalty in lieu of disqualification. Plaintiff was encouraged to respond, and by letter dated July 2, 1985, plaintiff explained that he was unfamiliar with the visit alleged to have occurred on March 14, but was well familiar with the three subsequent visits. He stated in his letter that he immediately recognized the situation as "a trap" and the customer as an investigator for the Food and Nutrition Service. Because plaintiff felt that he had been harassed for several years by the agency, he decided to "trap" the investigator. He accepted the food coupons in exchange for ineligible items, but instead of redeeming them, he marked on them the word "entrapment" and filed them. He intended to wait until the customer/investigator sought to sell him food coupons, i.e., purchase no items, but simply ask for cash in exchange for the coupons, at which time plaintiff intended to contact the local sheriff's department and end the scheme. At no time during his "investigation" did plaintiff contact any employee or agent of the Food and Nutrition Service to report the transactions. Although plaintiff recognized that Cogdill's investigation would have ended immediately if he had refused to accept the food coupons for ineligible items, plaintiff "just wanted to see how far he'd go." Deposition of plaintiff, p. 21. It was his intent to "lead this agent on in the food stamp business" until the agent asked him to exchange food coupons for cash. Affidavit of plaintiff, ¶ 9.

Plaintiff was notified by letter dated October 3, 1985, that because of the violations, New Cash Store would be disqualified from being permitted to participate in the food stamp program for a period of three years. Plaintiff thereafter requested, and was granted, an administrative review of the three-year disqualification. After a meeting with plaintiff on November 15, 1985, the review officer informed plaintiff by a detailed memorandum letter dated January 14, 1986, that the three-year disqualification would be upheld. As grounds therefor, the review officer found that violations had in fact occurred as the result of plaintiff accepting food coupons in exchange for ineligible items on four separate occasions. He found that of a total of 33 items sold for food stamps, 16, or about 48 percent, were ineligible and included cigarettes.

Plaintiff kept the four $10.00 food coupons which he had received from the investigator and still has them. He has never deposited or cashed them or attempted to deposit or cash them.

He filed suit in this court on January 29, 1986, seeking judicial review of the final agency action disqualifying him from the food stamp program for a period of three years. Both parties have moved for summary judgment in their favor.

## II. CONTENTIONS OF THE PARTIES.

Plaintiff does not dispute that the transactions occurred, i.e., that the investigator brought food stamps into the store, conducted the transactions, and left with the eligible and ineligible items. But plaintiff contends that he did not accept the food coupons. Deposition, pp. 18–19. He argues that he literally "gave" the ineligible items to Cogdill because he never intended to cash or deposit the coupons which were given to him by Cogdill. He argues that he was entrapped by the investigator, as evidenced by his decision to file the unredeemed coupons with the word "entrapment" written on them. He took the coupons as evidence to be used against the government in his own scheme to "trap" the investigator.

Defendant argues that plaintiff repeatedly accepted food coupons for ineligible

items in violation of the pertinent laws and regulations. It contends that the defense of entrapment is not available in a civil food stamp disqualification case. Even if it is available in such cases, no entrapment occurred herein. The government further contends that it is unlawful to acquire and possess food coupons in a manner not authorized by the Food Stamp Act or the accompanying regulations. Finally, the government argues that the three-year disqualification was not improper.

## III. CONCLUSIONS OF LAW.

This court has jurisdiction over this matter pursuant to 7 U.S.C. § 2023(a) (Supp. 1986).

■ Tyer, the aggrieved grocer, bears the burden here of proving by a preponderance of the evidence that the administrative rulings should be reversed. This court must uphold the findings of the Food and Nutrition Service unless the store owner can prove that the agency's determination is factually incorrect. *Otto v. Block*, 693 F.2d 472, 474–75 (5th Cir.1982); *Goodman v. United States*, 518 F.2d 505, 511 (5th Cir.1975); *Redmond v. United States*, 507 F.2d 1007, 1011–12 (5th Cir.1975).

A review of an administrative decision such as this suspension of food stamp redemption involves two questions: (1) did the violation occur? and (2) is the penalty valid? *Bruno's v. United States*, 624 F.2d 592, 594 (5th Cir.1980).

Section 2021 of Title 7 of the United States Code provides that any approved retail food store may be disqualified for a specified period of time from further participation in the food stamp program on a finding, made as specified in the regulations, that such store has violated any of the provisions of the appropriate laws or regulations. 7 U.S.C. § 2021(a). Such disqualification shall be for a period of time of not less than six months nor more than five years upon the first occasion of disqualification. *Id.* § 2021(b)(1). The action of disqualification is subject to a trial *de novo* in this court. *See id.* § 2021(c); *id.* § 2023(a).

Although the statute calls for a "trial *de novo* " in this court, cases arising under the Food Stamp Act, 7 U.S.C. § 2011 *et seq.*, may be resolved in the district court by summary judgment where there are no genuine issues of material fact. *Cullen Drive-In Grocery v. Block*, 778 F.2d 1141, 1142 (5th Cir.1985); *Modica v. United States*, 518 F.2d 374, 376 (5th Cir.1975). Accordingly, it is appropriate to briefly review the standard for granting summary judgment.

Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Richoux v. Armstrong Cork Corp.*, 777 F.2d 296, 297 (5th Cir.1985). The mere existence of a disputed factual issue does not foreclose summary judgment; the dispute must be genuine, and the facts must be material. *Professional Managers, Inc. v. Fawer*, 799 F.2d 218, 222–23 (5th Cir.1986). Furthermore, rule 56(c) permits summary judgment only when the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences about those facts. *Richoux*, 777 F.2d at 297; *Prinzi v. Keydril Co.*, 738 F.2d 707, 709 (5th Cir.1984).

For the purposes of the cross-motions in the action *sub judice*, the parties do not dispute any of the material factual assertions. *See Helms v. Southwestern Bell Tel. Co.*, 794 F.2d 188, 190 (5th Cir.1986). Plaintiff Tyer admits that he exchanged ineligible items for food coupons on three occasions. It is undisputed that investigator Berton Cogdill selected certain ineligible items, handed certain food coupons to plaintiff Tyer at New Cash Store in Beulah, Mississippi, and left the store carrying the items, and that plaintiff Tyer accepted the food coupons in exchange for the ineligible items.[2] *See United States v. Cash*, 486

---

2. The facts peculiar to this case distinguish it from *Hough v. United States Department of Agriculture*, 707 F.2d 866 (5th Cir.1983), in which

the Court of Appeals for the Fifth Circuit affirmed this court's determination that the grocery store operator had violated the Food Stamp

F.2d 295, 296 n. 2 (5th Cir.1973) (undisputed evidence established that on separate occasions, store owner received food coupons as payment for unauthorized items).

Plaintiff's sole defense is that he was entrapped by the investigator and that he intended to ensnare the investigator in his own scheme.

■ The doctrine of entrapment, however, is generally limited to use in criminal actions. *See Sorrells v. United States,* 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932). Entrapment occurs when the criminal intent originates with the government officials and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to permit a prosecution. The purpose of the doctrine of entrapment is to avoid criminal punishment for a defendant who has committed all elements of a criminal offense, but was induced to commit them by the government. *Id.* Thus, such a defense is not available to plaintiff in this civil action challenging its disqualification from the food stamp program. *See Rodriguez v. United States,* 534 F.Supp. 370, 373–74 (D.P.R. 1982) (finding defense of entrapment unavailable to store operator disqualified from food stamp program).

In any event, the investigative technique used in this situation does not even begin remotely to resemble entrapment. Before the investigation, Tyer was on many occasions informed of the rules and regulations of the food stamp program, and he admittedly knew those rules. Deposition of plaintiff, pp. 4–5. The affidavit of investigator Cogdill reveals that he never attempted to persuade, cajole, or badger Tyer into selling him ineligible items. Tyer was perfectly free to accept or reject the food coupons offered by the investigator for ineligible items. He freely and willingly chose to accept them. Tyer does not dispute these facts. These circumstances are nearly identical to those in *Otto v. Block,* 693

F.2d 472 (5th Cir.1982), which involved the disqualification of a store from the food stamp program. An employee of the store was caught red-handed accepting food coupons as payment for ineligible items. The investigation procedure used by agents of the Food and Nutrition Service was substantially the same as that used by investigator Cogdill in the action *sub judice. See id.* at 473. The court of appeals found that such actions did not constitute entrapment. *Id.* at 475.

Based on the record before this court, it is beyond dispute that a violation occurred. That settles the first issue in a situation such as this.

The second issue is whether the penalty imposed by the Food and Nutrition Service is a valid one. The standard for reviewing a penalty assessed by an administrative agency was set out in *Goodman v. United States,* 518 F.2d 505, 511 (5th Cir.1975): "To be valid, a sanction must not be arbitrary and capricious, and a sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact." In order to find the penalty invalid as arbitrary and capricious, only one of the two needs to be proven. *Bruno's,* 624 F.2d at 594 n. 3.

The determination appropriately to be imposed for a violation of the Food Stamps Act is an exercise of administrative discretion. *Id.* at 594. The determination of the sanction to be applied to one who violates the Act is set out in Food and Nutrition Services guidelines § 744–9. These guidelines provide some uniformity in assessment of penalties, but are flexible enough to fit the unique facts of each case. They do not contemplate that a violator store shall be suspended from redeeming food stamps the first time it is caught in a violation unless there are special circumstances relating to the violation. In determining whether the violation warrants a more serious penalty than a letter of warn-

---

Act and regulations thereunder. This court had conducted a trial *de novo* as required by 7 U.S.C. § 2023. In contrast to the action *sub judice,* however, the store operator in *Hough*

vigorously denied that any of the purchases made by the undercover investigators had occurred. *Hough,* 707 F.2d at 867.

ing, the guidelines look at many factors, including (1) the ratio of ineligible items to total purchases, (2) the types of ineligible items, (3) the percentage of clerks involved, (4) whether the illegal sales were inadvertent or deliberate, and (5) whether the violations are a matter of store policy. *Id.* at 595 & nn. 4–8.

■ The ratio of ineligible items to total purchases clearly indicates that a three-year disqualification is not unwarranted. The investigator purchased a total of 33 items, 16, or 48 percent, of which were ineligible items.[3] *Compare Bruno's*, 624 F.2d at 595 (of items purchased by undercover investigator, 23% were ineligible); *Hough v. United States Department of Agriculture*, 707 F.2d 866, 868 (5th Cir. 1983) (investigators purchased total of 83 items, 28 of which were ineligible); Guidelines Section III(A)(4)(b) (violation considered serious if half of items purchased are ineligible).

The court should also consider the types of ineligible items. Section III(A)(4)(a) of the guidelines divides ineligible items into three categories, two of which are applicable herein: (1) common grocery type ineligible items and (2) major non-grocery type ineligible items. Investigator Cogdill purchased twelve items of the common grocery type: bathroom tissue, sandwich bags, soap pads, laundry detergent, bleach, cleaner, and razors. He also purchased four items of the major non-grocery type: light bulbs and three cartons of cigarettes. Affidavit of Cogdill; deposition of plaintiff, p. 18. The court finds that the purchase of these types of items in exchange for food coupons supports the administrative decision of a three-year disqualification.

The percentage of clerks involved is another factor which should be considered. New Cash Store is apparently a sole proprietorship owned and operated by plaintiff Tyer. He was identified as the only clerk who conducted the transactions in issue here. Affidavit of Cogdill. Tyer also stated that he has never had a black female

clerk work in his store. Affidavit of plaintiff, ¶ 2. Thus, the evidence shows that one hundred percent of the clerks were involved in the transactions.

The court must also decide if the illegal sales were inadvertent or deliberate. The evidence herein clearly shows that the sales were deliberate. Plaintiff has admitted that he intentionally exchanged food coupons for ineligible items. Deposition of plaintiff, pp. 11–19; affidavit of plaintiff, ¶ 9, 10 & 13. His intent was to entrap the investigator and "just to see how far he'd go." Deposition of plaintiff, p. 21. There is simply no allegation by plaintiff that he inadvertently conducted the transactions.

In this case, the record definitely establishes that the violations were a part of store policy. If the owner of the store is the person selling ineligible goods, it is only logical to assume that he is both making and acting out store policy. *Otto*, 693 F.2d at 474. Indeed, the guidelines of the Food and Nutrition Service so provide. *See* 744–9 III(B)(4)(a) ("substantial participation by the owner" may establish store policy). In the detailed records which investigator Cogdill was required to maintain, he described the clerk who participated in the acts of exchanging food coupons for items in the store. Plaintiff Tyer admitted in his deposition that that description fit him. Deposition of plaintiff, p. 8. He also admitted that he particpated in three transactions involving the exchange of ineligible goods for food coupons. *See also* affidavit of plaintiff, ¶ 12 (indicating that he has never had a black female clerk in the store); affidavit of Cogdill (describing clerk). Store policy is thus established by Tyer's participation. *See Otto*, 693 F.2d at 475; *accord Woodard v. United States*, 725 F.2d 1072, 1076 (6th Cir.1984) (discussing "policy"); *Bertrand v. United States*, 726 F.2d 518, 521 (9th Cir.1984) (same).

The Food and Nutrition Service shall disqualify a store for three years if it is the firm's practice to sell expensive or conspic-

---

**3.** Even if the court considers that the investigator visited New Cash Store only three times as claimed by plaintiff, the ratio would be high: in

those three visits, investigator Cogdill selected 26 items, 13, or 50 percent, of which were ineligible items.

uous nonfood items or cartons of cigarettes in exchange for food coupons. 7 C.F.R. § 278.6(e)(3)(ii); 7 C.F.R. § 278.6(e)(2)(i). There is no requirement that the Food and Nutrition Service advise the store prior to disqualification of the possibility that violations were occurring and of the possible consequences of violating the regulations. 7 C.F.R. § 278.6(e)(3)(ii). A "firm's practice" means the usual manner in which personnel of a firm or store accept food coupons as shown by the actions of the personnel at the time of the investigation. 7 C.F.R. § 271.2.

Investigator Cogdill was able to determine the usual manner in which Tyer accepted food coupons in the three or four transactions which occurred in March, 1985. On the three visits which are undisputed, the investigator purchased 26 items, half of which were ineligible, including a carton of cigarettes on each occasion. Although there was some conversation between Tyer and the undercover agent, Cogdill did not attempt to persuade or cajole Tyer into exchanging the food coupons for the ineligible items. A letter issued by the Food and Nutrition Service to plaintiff on July 9, 1984, was not considered as significant compliance action since it did not involve a store visit or face-to-face contact. Accordingly, the three-year disqualification is neither unwarranted in law nor without justification in fact. *Cf. Plaid Pantry Stores, Inc. v. United States*, 612 F.Supp. 680, 685–86 (D.Ore.1985) (reviewing three-year disqualification of store).

As noted, disqualification shall be for a reasonable period of time, of no less than six months nor more than five years, upon the first occasion of disqualification. 7 U.S.C. § 2021(b)(1) (Supp.1986). In considering a three-year penalty, the Food and Nutrition Service considered the repeated, intentional violations of New Cash Store, the direct involvement of the owner, plaintiff Tyer, and the serious nature of the ineligible items sold for food coupons, which included three cartons of cigarettes. The Service expressly did not consider the July 9, 1984, letter as a significant compliance action. Having reviewed the actions of, and the penalty imposed by, the Food and Nutrition Service, the court finds that the three-year sanction is not arbitrary and capricious.

Finally, plaintiff seeks exoneration on the grounds that he did not really "accept" the food coupons. He contends that he in fact "gave" the ineligible items to the investigator because he had no intention of redeeming the coupons which the investigator tendered in exchange for the items. In other words, he argues that because he did not redeem the coupons, he committed no violation of the Food Stamp Act. This argument has no merit.

The Court of Appeals for the Fifth Circuit has not addressed the precise issue of whether redemption of food coupons which were accepted or acquired in exchange for ineligible items is necessary to find a violation of the Food Stamp Act in a civil action. However, in *United States v. Cash*, 486 F.2d 295 (5th Cir.1973), which involved criminal prosecutions of violators of the Food Stamp Act, the court made clear that the statute, 7 U.S.C. § 2024(b), and the accompanying regulations, *e.g.*, 7 C.F.R. § 271.5(b), prohibit anyone from *acquiring* or *possessing* coupons in any unauthorized manner. *Cash*, 486 F.2d at 296 (emphasis in original). Thus, the *acquisition* by an authorized retailer or agent of a coupon issued under the Act for any ineligible item is clearly chargeable as a violation of the Act. *Id.* The regulations make this clear. *See, e.g.*, 7 C.F.R. § 278.2 (coupons may be accepted by an authorized retail food store only for eligible items); 7 C.F.R. § 271.5(b) (any unauthorized *acquisition* or *possession* of coupons may subject an entity to prosecution). The statute itself makes clear that unauthorized acquisition and possession of food coupons is a separate and distinct offense from the presentation of the coupons for payment or redemption. *See* 7 U.S.C. § 2024(b) and (c). Therefore, plaintiff's claim that his refusal to redeem or seek payment for the coupons prohibits any penalty imposed is meritless. The court notes that the Fifth Circuit Court of Appeals found violations of the Act in *Cash* despite the fact that there was no attempt by those defendants to present the coupons

for payment or redemption. *Cash*, 486 F.2d at 296 n. 4.

The issue of whether redemption of improperly obtained food coupons is required for a violation of the Food Stamp Act and its accompanying regulations was addressed by the Court of Appeals for the Tenth Circuit in *Wolf v. United States*, 662 F.2d 676 (10th Cir.1981). The personnel of the food store in *Wolf* had exchanged food coupons for ineligible items, and the Food and Nutrition Service had imposed the penalty of disqualification. Wolf argued, as does plaintiff in the action *sub judice*, that the government must prove that the store redeemed the improperly accepted coupons. The court concluded, however, that no showing of redemption is required because the regulations forbid the store's *acceptance* of coupons for ineligible items. *Id.* at 678 (emphasis in original and citations omitted).

■ The court finds that redemption of unlawfully obtained food coupons is not required to establish a violation of the Food Stamp Act. Mere acquisition or possession of such coupons is all that is required to establish a violation of the Act. Despite plaintiff's reluctance to characterize his actions as "acceptance" of the food coupons, deposition of plaintiff, p. 18, the court finds that he accepted the coupons in exchange for ineligible items. He acquired and possessed said coupons in clear violation of the statute and regulations, and he knew such transactions were prohibited.

### IV. SUMMARY.

The court finds that plaintiff knowingly, wilfully, and intentionally accepted food coupons in exchange for several ineligible items, including three cartons of cigarettes, on three or four separate occasions. The court also finds that plaintiff was well aware of the laws and regulations governing the food stamp program. The defense of "entrapment" is not available to plaintiff in this action and, in any event, the facts and circumstances would not support a claim of entrapment. The court finds that it was the firm's practice to exchange ineligible items, including cartons of cigarettes, for food coupons. The court further finds

that the three-year disqualification from the food stamp program is neither arbitrary nor capricious. Accordingly, the court is of the opinion that plaintiff's motion for summary judgment should be denied and that defendant's motion for summary judgment should be granted.

An order in conformance with this opinion shall issue.

### ORDER OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In conformance with an opinion this day rendered, IT IS ORDERED:

That plaintiff's motion for summary judgment be and hereby is overruled;

That defendant's motion for summary judgment be and hereby is granted;

That the three-year disqualification of New Cash Store in Beulah, Mississippi, imposed by the Food and Nutrition Service, United States Department of Agriculture, begin immediately;

That plaintiff's complaint be and hereby is dismissed with prejudice;

That this action be and hereby is removed from the docket of this court.