**Billy Joe BORDELON, d/b/a Bordelon's Central Fish Market, Plaintiff-Appellant,**

v.

**John R. BLOCK, Secretary of the United States Department of Agriculture, Defendant-Appellee.**

**No. 86-4438**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Dec. 11, 1986.

B. Dexter Ryland, Alexandria, La., for plaintiff-appellant.

D.H. Perkins, Jr., John R. Halliburton, Asst. U.S. Attys., Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., for defendant-appellee.

Before RUBIN, RANDALL and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Billy Joe Bordelon ("Bordelon"), d/b/a Bordelon's Central Fish Market, brought suit in the district court below seeking judicial review of an administrative determination of the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA") which permanently disqualified Bordelon from participation in the federal food stamp program. The district court judge granted the Government's motion for summary judgment, and Bordelon pursued this appeal. For the following reasons, we affirm.

## I.

On July 21, 1983, Patrick Martinez, an investigator with the Compliance Branch of FNS, entered Bordelon's Central Fish Market. He purchased two food items worth $8.75 with a USDA $10 food stamp coupon. He received the correct change from the cashier, a $1 coupon and 25 cents in cash.

After this purchase, Martinez asked the cashier if "the boss" was in. The cashier pointed out Bordelon. Martinez approached Bordelon and explained that he had collected $24 worth of food stamps through the sale of shrimp on his shrimp route. Martinez asked if Bordelon could exchange these stamps for cash. Bordelon then instructed his cashier to give Martinez $23 in cash for the $24 worth of food stamps. Bordelon explained that he could only give Martinez $23 because Bordelon had to pay taxes on this $24.[1]

After this transaction, Martinez prepared a transaction report describing this event. On September 28, 1984, a report of a positive investigation, including Martinez's report, was submitted to the USDA office in Dallas.

On February 6, 1985, Bordelon received a charge letter from the Chief of the Compliance Management ("Chief"), Family Nutrition Programs. This letter told Bordelon that he was being charged with accepting food coupons in exchange for cash, a viola-

---

1. Government's Exhibit C revealed that agents attempted on five other occasions to sell food stamps to Bordelon for cash, but were refused all five times.

tion of 7 C.F.R. § 278.2(a). By letter, Bordelon denied this charge. The case was reviewed and the Chief concluded that Bordelon must be permanently disqualified from the program. Bordelon was notified of this result.

After this notification, Bordelon made a timely administrative appeal. The case was sent to an administrative review officer of the USDA. The officer met with Bordelon in September 1985 and completely reviewed the file *de novo*. The officer concluded that the violative transaction occurred, and upheld the Chief's determination.

Bordelon appealed from this determination to the district court. On appeal to the district court, he abandoned his contention that the violative transaction had never occurred, and admitted exchanging cash for the food stamps. The district court granted the Government's motion for summary judgment, 636 F.Supp. 713 (W.D.La.1986). From this judgment, Bordelon appeals.

## II.

"Cases arising under the Food Stamp Act, 7 U.S.C. § 2011, *et seq.,* may be resolved in the district court by summary judgment where there are no genuine issues of material fact." *Cullen Drive-In Grocery v. Block,* 778 F.2d 1141, 1142 (5th Cir.1985) (citing *Modica v. United States,* 518 F.2d 374, 376 (5th Cir.1975)). In reviewing the district court's decision to grant summary judgment, we apply the same standard of review as the district court. *Poller v. Columbia Broadcasting Sys., Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Shaffer v. Williams,* 794 F.2d 1030, 1032 (5th Cir.1986); *Cullen,* 778 F.2d at 1142; *United States Steel Corp. v. Darby,* 516 F.2d 961, 963 (5th Cir.1975). Federal Rule of Civil Procedure 56 governs motions for summary judgment. Under Rule 56(c), summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." An issue of fact is material if it is outcome determinative. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986).

When ruling on a motion for summary judgment, the trial court must decide if a trial is needed. It must decide if "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). To prevail, the moving party must prove the lack of genuine issue of material fact by "informing the district court of the basis for its motion, and identifying those portions of [the summary judgment evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once this burden is fulfilled, the motion should be granted unless the non-moving party shows good reason why he is unable to present facts in opposition to the motion, see Fed.R.Civ.P. 56(f); *Bricklayers Int'l Union of Am., Local Union No. 15 v. Stuart Plastering Co.,* 512 F.2d 1017 (5th Cir.1975), or the opposing party, in fact, shows that there is a genuine issue of fact concerning an essential element of the claim on which judgment is being sought. *See* Fed.R.Civ.P. 56(e); *Fontenot v. Upjohn Co.,* 780 F.2d 1190 (5th Cir.1986). Bordelon has not met this burden.

■ Bordelon concedes that he exchanged cash for food stamps in violation of 7 U.S.C. § 2021, which states in pertinent part:

(a) Any approved retail store or wholesale food concern may be disqualified for a specified period of time from further participation in the food stamp program, or subject to a civil money penalty of up to $10,000 for each violation if the Secretary determines that its disqualification would cause hardship to food stamp households, on a

finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter.

(b) Disqualification under subsection (a) of this Section shall be—

. . . . .

. . . . .

(3) permanent upon ... the first occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorized cards by a retail food store or wholesale food concern.

Bordelon's violation falls under § 2021(b)(3). Bordelon nevertheless challenges the permanent disqualification sanction required by this section, stating that he thought he was legally purchasing food stamps from another retailer. This contention is of no consequence. The only authority which allows the purchase of food stamps is 7 C.F.R. § 278.3(a) which states that an "authorized wholesale food concern may accept endorsed coupons from ... authorized retail food stores, ... if the coupons are accompanied by a properly filled-out and signed redemption certificate, and are not marked 'paid,' 'canceled,' or 'specimen.'" Bordelon has not complied with these formalities and is not an authorized wholesaler. The violated statute, 7 U.S.C. § 2021(b)(3), also does not require that the violation be intentional or that stamps be purchased from a food stamp recipient. It does, however, require permanent disqualification of a retailer who purchases food stamps in an unauthorized manner. Since Bordelon admits the violative transaction, and does not contend he is an authorized wholesaler, and has not supplemented the record in any fashion, he has not shown that there is a genuine fact issue. The district court correctly granted the Government's summary judgment motion on the issue of whether a violation occurred.

**III.**

Bordelon also argues that the FNS's sanction of permanent disqualification was too severe. The district court's standard of review of a sanction is limited to whether the sanction was arbitrary and capricious. "[A] sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact." *Goodman v. United States*, 518 F.2d 505, 511 (5th Cir.1975) (quoting *Cross v. United States*, 512 F.2d 1212, 1218 (4th Cir.1975) (en banc); *see also Hough v. United States Dep't of Agric.*, 707 F.2d 866, 868–69 (5th Cir.1983); *Otto v. Block*, 693 F.2d 472, 473 (5th Cir.1982).

If an agency action adheres to its internal guidelines, it is not arbitrary and capricious. *Otto v. Block*, 693 F.2d 472, 473–74 (5th Cir.1982); *see also Bruno's, Inc. v. United States*, 624 F.2d 592 (5th Cir.1980). Here, the agency guidelines were adhered to. The agency guidelines are set forth in 7 C.F.R. § 278.6 and FNS Instruction 744–9,[2] which require permanent disqualification if personnel of the firm have trafficked in coupons. The regulations also do not allow a money penalty in lieu of disqualification, when the disqualification is permanent. 7 C.F.R. 278.6(f). Therefore, the district court was correct in finding that the agency sanction imposed was not arbitrary and capricious.

**IV.**

For the above reasons, we AFFIRM.

---

**2.** FNS Instruction 744–9(IV)(A)(3) states:

Trafficking. A firm has an affirmative duty to prevent trafficking on its premises. The purchase of any amount of food stamps or Authorization to Participate (ATP) cards for any amount of cash shall warrant permanent disqualification, regardless of whether or not the firm benefited from the violation, or the owner or management of the firm had knowledge of the violation.