**Stephan L. HONORE,**
**Plaintiff–Appellant,**

v.

**James M. DOUGLAS, et al.,**
**Defendants–Appellees.**

No. 87–2484
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1987.

---

David T. Lopez, David T. Lopez & Associates, Houston, Tex., for plaintiff-appellant.

Jim Mattox, Atty. Gen., Lou Bright, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before POLITZ, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

Stephan L. Honore appeals an adverse summary judgment, rejecting his claims that the termination of his employment as a member of the faculty of the Thurgood Marshall School of Law of Texas Southern University (TSU) violated his due process and first amendment rights. For the reasons assigned we vacate and remand.

### Background

Honore was employed as an assistant, then associate, professor of law by TSU from June 1, 1974 until May 31, 1984. After serving four academic years, 1974–1978, Honore was granted three consecutive one-year leaves of absence to serve in the Peace Corps. He returned to full-time teaching in 1981, continuing until TSU declined to grant tenure status and terminated him three years later.

In 1981 when Honore returned to the law school after service with the Peace Corps, the Rank and Tenure Committee of the law school recommended that he be promoted to associate professor and recognized as having tenure, based on his four years of teaching and three years of authorized leave. When Honore was first employed in 1974, controlling University regulations provided for tenure at the end of seven years. The record indicates that this regulation was interpreted as being self-effective and automatic. There was a dispute whether a period of authorized leave would be accruable time. Honore was promoted, but the TSU regents did not extend tenure. Because Honore was then a member of the Rank and Tenure Committee, he maintained that he chose not to contest the disputed tenure question at that time.

In 1978 University regulations affecting tenure were changed to delete the provision allowing automatic vesting of tenure after seven years' service. The provisions of the 1978 manual require the law school and university representatives to address a petition for tenure initially, with the Board of Regents retaining ultimate decisional au-

thority. Those provisions further require notification of the nontenured faculty member, by May 31 of the sixth probationary year, that the seventh year will be the final year of employment unless tenure is sought and secured.

On February 13, 1983, the dean of the law school notified Honore that the next year would be his last unless he became tenured. Insisting that he had automatic tenure under the 1974 regulations, Honore sought formal confirmation of that status. The faculty Rank and Tenure Committee unanimously recommended tenure. The dean objected to Honore's tenure, and the Board of Regents rejected the application. Honore sought review by a faculty hearing committee which received sworn testimony and documentary evidence, including the testimony of Honore, the dean, the former legal counsel for the university who had drafted the 1978 regulations at issue, as well as other members of the faculty tenure committee. The faculty hearing committee recommended that Honore be granted tenure. Its recommendation was rejected, however, by the TSU president and regents.

The record reflects that following his return from the Peace Corps assignment, Honore was active and vocal in law school affairs; and he was directly involved in a number of disputes with the dean. Prior to and about the time of the February 1983 tenure-notice letter, Honore had protested actions by the dean, signed grievance letters, and participated in a meeting of 18 of the 22 members of the faculty where 12, including Honore, expressed a lack of confidence in the dean. The other six abstained from voting. Among items of controversy were the law school admissions policy, the size of the student population, administration of the school budget, and the failure to certify graduates for the Texas bar examination in a timely fashion.

Following the rejection of his tenure petition, Honore filed the instant suit seeking equitable and monetary relief, alleging due process and first amendment violations, and pendent state-law claims. Shortly prior to trial the court considered the matter

on motion for summary judgment, found no genuine issue of material fact, and concluded that defendants were entitled to judgment as a matter of law. Honore appeals.

## Analysis

The court may terminate litigation by rendering a summary judgment where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Bordelon v. Block*, 810 F.2d 468 (5th Cir.1986); *Galindo v. Precision American Corp.*, 754 F.2d 1212 (5th Cir.1985). Once the moving party makes the initial showing, negating any disputed, material fact, the party opposed to the motion must offer evidence reflecting the existence of one or more genuine issues of material fact. Fed.R.Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The bare allegations of the pleadings will not suffice. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

▮ Honore made no specific response in opposition to defendants' motion, but he had previously offered various admissions of the parties and the transcript of the testimony and arguments before the faculty hearing committee. Summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. It is not the function of the trial judge, in ruling on a motion for summary judgment, to weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence. Those are functions of the trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987) ("The Supreme Court has not, however, approved summary judgments that rest on credibility determinations ... [and] the Court reminds district judges not to invade the role of the jury.").

We consider the appeal using these rules for guidance, resolving all factual uncer-

tainties and making all reasonable inferences in favor of the nonmoving party. *Anderson; Wilson v. Taylor*, 658 F.2d 1021 (5th Cir.1981).

*Due Process*

■ We find no merit in Honore's claim of a denial of procedural due process. He received adequate notice and was given a fair opportunity to be heard. *Wells v. Dallas Independent School District*, 793 F.2d 679 (5th Cir.1986). The Board of Regents retained ultimate decisional authority, and its rejection of the hearing committee's recommendation did not vitiate the adequacy of the process. *Levitt v. University of Texas at El Paso*, 759 F.2d 1224 (5th Cir.), *cert. denied*, 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985). *See generally, Ranyard v. Board of Regents*, 708 F.2d 1235 (7th Cir.1983).

However, despite this finding of procedural adequacy, we do not agree with the trial court's rejection of the substantive due process claim. To reach the jury with his substantive due process claim, Honore must demonstrate a genuine issue of material fact about his protected property interest (entitlement to vested tenure) and the university's arbitrary or capricious deprivation of that interest. *See, e.g., Regents of University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Schaper v. City of Huntsville*, 813 F.2d 709 (5th Cir.1987).

■ The trial court concluded that Honore had presented insufficient evidence to create a genuine issue relating to his claim to automatic tenure. It found that Honore had offered no evidence to support his claim of legitimate entitlement to automatic tenure other than an ambiguous "impression of support" from the dean of the law school. The court stated that Honore had not contended that the 1974 regulations, arguably providing for automatic tenure, applied to his case; and it concluded that his 1983 petition formally seeking a declaration of tenure belied his alleged understanding that automatic tenure vested in 1981.

We disagree with these conclusions. In his pleadings Honore made repeated references to regulations in force when he began work in 1974. He claimed the benefit of those regulations. The transcript before the faculty hearing committee contains sufficient evidence to create a jury issue that Honore was claiming automatic tenure under the regulations in effect in 1974, that those regulations were self-effectuating, vesting automatic tenure after seven years of teaching, and that authorized leave time counted as teaching time. Under that scenario, if it be accepted, after Honore taught for four years, was on authorized leaves of absence for three years, and returned to work in 1981 for the eighth year, he was entitled to tenure.

The transcript also contains the testimony of the former counsel for the university, an attorney who drafted the 1978 regulations which changed the tenure requirements. He attested to the nonretroactivity of the 1978 regulations and stated that the earlier regulations controlled the rights of those hired prior to 1978. That witness, a member and former chairman of the faculty tenure committee, was of the opinion that Honore was vested with tenure upon his return from the Peace Corps assignment. Honore testified that it was not until 1983 that he became aware of the 1978 regulations which had been adopted while he was away. He maintains that his first notice came when he received the February 1983 letter from the dean. He testified that he applied to the Rank and Tenure Committee solely for administrative recognition of the tenure previously acquired in 1981. The record reflects genuine issues of material fact regarding these matters. Resolution of these factual disputes will involve credibility assessments. Such evaluations may not be made in a summary judgment setting. *Leonard v. Dixie Well Service & Supply, Inc.*

We are persuaded that Honore has created a genuine issue concerning his "legitimate claim of entitlement" based on "mutually explicit understandings." *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). He has of-

fered sufficient evidence to reach the trier of fact on the claim that the 1974 regulations created a reasonable understanding that tenure would automatically vest in 1981 if he continuously remained on the law school faculty. *See generally, Ferguson v. Thomas,* 430 F.2d 852 (5th Cir.1970).

Moreover, the record contains indicators of arbitrary and capricious deprivation. The dean of the law school conceded that he told Honore that his teaching performance was adequate. Honore testified that neither the dean nor any other law school authority ever questioned his teaching performance. He supported his academic credentials with activities generally accepted as reflective of legal scholarship. In addition to publication of writings in legal journals, those activities included beginning a law review program at TSU, training TSU law students for moot court competition, chairing two faculty committees, and, most significantly, establishing a research and writing program designed to assist minority law students at TSU and teaching a similar course at Washburn University. This testimony, alone or in combination with circumstantial evidence of impermissible retaliatory motive (discussed *infra* ), creates a genuine issue of material fact as to the arbitrary and capricious nature of Honore's dismissal.

■ We are mindful of the Supreme Court's admonishment in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), that a federal court is generally not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. This measure of judicial restraint, however, does not require slavish deference to a university's arbitrary deprivation of a vested property right. *Slochower v. Board of Education of New York,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692, *modified on denial of reh'g,* 351 U.S. 944, 76 S.Ct. 843, 100 L.Ed. 1470 (1956); *Brown v. Texas A & M University,* 804 F.2d 327 (5th Cir.1986); *United States v. Lulac,* 793 F.2d 636 (5th Cir. 1986); *Zeigler v. Jackson,* 638 F.2d 776 (5th Cir.1981); *Green v. Board of Regents of Texas Tech University,* 474 F.2d 594

(5th Cir.1973). Honore is entitled to a jury resolution of his substantive due process claim.

*First Amendment*

Honore contends that he was dismissed in retaliation for the exercise of his first amendment right to free speech. Regardless of the tenure issue, he could not be discharged for that reason, *Jett v. Dallas Independent School District,* 798 F.2d 748 (5th Cir.1986). To establish this claim, Honore must show that his activity was protected by the first amendment and that the protected activity was a substantial and motivating factor in the decision to deny him tenure. Once this is done the defendants must show "by a preponderance of the evidence that [they] would have reached the same decision," without consideration of the protected activity. *Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471, 484 (1977).

■ The trial court found that Honore's speech embraced subjects of public concern which were protected by the first amendment. That factual finding is amply supported by the record, clearly sufficient to erect the disputed-fact bar to summary judgment. It may be that the defendants will be able to establish a basis for terminating Honore completely dehors the free speech elements. The record before us contains conflicting evidence. The defendants rely on the dean's affidavit, which proclaims innocence of improper motivation. Honore offered the testimony of a tenure committee member that the dean originally supported his tenure. Further, the dean testified that he changed his mind about Honore, a change which occurred contemporaneously with Honore's open challenges to the dean's administration of the law school. At the core of the matter are both credibility assessments and issues of motive and intent.

We have noted *supra* that summary judgment is ill-suited for credibility determinations. It is likewise an inadequate procedure for sorting out nebulous questions of motivation. As we observed in *Thornbrough v. Columbus & Greenville*

*Railroad Company,* 760 F.2d 633, 641 (5th Cir.1985):

> Often, motivation and intent can only be proved through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder. In reviewing a case on appeal, it is difficult to determine what evidence might legitimately sway the factfinder and hence be material. Thus, if any facts are in dispute, summary judgment is generally inappropriate.

The record before us contains sufficient conflicting evidence about material facts to present jury issues. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218 (5th Cir.1986). Honore has adequately challenged the underlying facts upon which the summary judgment motion rests. *Celotex Corp. v. Catrett.*

The summary judgment is VACATED and the matter is REMANDED to the district court for further proceedings consistent herewith.

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring in part and dissenting in part:

I agree that this case must be remanded for the reasons stated in Judge Politz's fine opinion, except in one respect. I am unpersuaded that the state deprived Honore of any substantive due process rights. We otherwise have concluded that the university gave Honore all his procedural rights. It is true that Honore's entitlement to automatic tenure is fairly debatable. Honore, however, has no constitutional claim to a favorable resolution of that dispute. Characterizing as arbitrary the university's decision that Honore has no such tenure rights does not transform this contractual dispute into a dispute of constitutional magnitude. I would affirm the district court's decision in all respects except the question of whether Honore was denied tenure because he engaged in protected first amendment activity.