INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO and Local Lodge 2771, Plaintiffs,

v.

DYNCORP, AEROSPACE OPERATIONS, SHEPPARD ENJJPT DIVISION and Douglas Hadley, Individually and as Representative of others similarly situated, Defendants.

Civ. A. No. CA–7–90–008.

United States District Court, N.D. Texas, Wichita Falls Division.

May 1, 1991.

Rod Tanner, Tanner, Schattman & Whitton, Fort Worth, Tex., for plaintiffs.

Holly Crampton, Crampton & Estrada, Wichita Falls, Tex., Ruth Morrel, Group Gen. Counsel, Dyncorp, Reston, Va., Richard J. Clair, Nat. Right to Work Legal Defense Foundation, Springfield, Va., Alan Mask, Jenkins, Watkins & Mask, Dallas, Tex., for defendants.

ORDER GRANTING DEFENDANT HADLEY'S MOTION FOR SUMMARY JUDGMENT

MARY LOU ROBINSON, District Judge.

Before the Court is Defendant DOUGLAS HADLEY's (Hadley) Motion for Summary Judgment, filed July 23, 1990, and the responses of Plaintiffs INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO (IAM) and LOCAL LODGE 2771 (Local Lodge). For the following reasons, this Motion is granted.

I. BACKGROUND [1]

This is an action for declaratory judgment arising under the Constitution and

---

1. These background facts are undisputed by the parties and the Court accepts them as true for the purposes of this motion.

laws of the United States. Pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185[2], and the federal declaratory judgment statute, 28 U.S.C. § 2201[3], the IAM and its affiliated Local Lodge are seeking a declaration that a union security clause in a collective bargaining agreement with Defendant Dyn-Corp, Aerospace Operations, Sheppard ENJJPT Division (DynCorp) is enforceable under federal law, despite contrary Texas right-to-work laws.[4]

This action is also brought against Defendant Hadley, individually and as representative of a class of individuals similarly situated, pursuant to Fed.R.Civ.Pro. Rule 23.[5] Hadley is employed by DynCorp in the communications navigational shop at Sheppard Air Force Base, Wichita Falls, Texas (Sheppard). An electronic technician, he repairs communications and navigational equipment on military airplanes. While DynCorp employees at Sheppard are represented by Plaintiff IAM and its Local Lodge, Mr. Hadley is not a union member.

IAM and its Local Lodge are labor organizations engaged in representing or acting for employees in an industry affecting interstate commerce. DynCorp is engaged in the business of aircraft maintenance on the premises of Sheppard pursuant to a service contract with the United States of America, and is an employer in an industry affecting interstate commerce. DynCorp has approximately 512 employees at Sheppard. DynCorp's service contract with the federal government became effective on January 1, 1987; the last option year expires on September 30, 1991.[6]

This contract regulates the employment relationship between DynCorp and the government and establishes the government's right of control over significant employment matters.[7] Pursuant to this contract, all revenues received by DynCorp from its operations at Sheppard are federal

---

**2.** Title 29, United States Code, section 185 concerns suits by and against labor organizations. It states in relevant part:

(a) Venue, amount, and citizenship
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

**3.** Section 2201 of Title 28, United States Code, is titled "Creation of remedy." It states in relevant part:

(a) In a case of actual controversy within its jurisdiction, except [for actions not relevant here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

**4.** DynCorp is named as a defendant in this suit pursuant to Rules 19 and 57 of the Federal Rules of Civil Procedure because the company is a necessary party whose interests will be affected by the Court's decision. The Plaintiffs point out, however, that the interests of the unions and DynCorp are not truly adverse and both parties submit that the union security clause at issue is valid and enforceable.

**5.** The class is defined as those persons who are employed as hourly production, maintenance or technical employees of DynCorp who refuse to pay agency fees required by the union's collective bargaining agreement and/or who contend that such a mandatory fee requirement is unlawful by reason of the Texas right-to-work laws.

**6.** The contract is for a base performance period of nine months, ending September 30, 1987. *See* Contract Section B, subsection 1, Item 0001 at page B–1 (Tab 2 to Plaintiffs' Appendix in opposition to Defendant's Motion for Summary Judgment). Thereafter the contract has four option years, the last period ending on September 30, 1991. *See id.* at Item 0002 through 0005, page B–1 & 2. However, the contract also contains a clause that allows the government to extend the then current contract performance period for not less than one nor more than six months on the same terms and conditions. *See id.* at Section I, subsection 10, page I–13.

**7.** The contract establishes various restrictions over Dyncorp's employment of personnel and gives the government certain rights to control which Dyncorp employees are allowed on the base at Sheppard. The contract regulates minimum standards with respect to Dyncorp's wage rates and fringe benefits, in accordance with the Service Contract Act of 1965, as amended, and various regulations promulgated thereunder.

funds. The contract also incorporates various federal laws and regulations which govern the terms and conditions of employment at Sheppard.

IAM is the exclusive collective bargaining representative of DynCorp's hourly production, maintenance and technical employees pursuant to certification by the National Labor Relations Board (NLRB). IAM represents approximately 470 employees in the bargaining unit at Sheppard and an additional four employees in the unit who work in Oklahoma. IAM and DynCorp have entered into a collective bargaining agreement, effective August 27, 1989.

Pursuant to this agreement, the wages, hours of work and other conditions of employment of all employees in the bargaining unit are established. This agreement is effective through September 30, 1992. DynCorp, IAM and the Local Lodge recognize in the agreement that DynCorp "is required at all times to fully meet its obligations as a [federal government] contractor." *See* Collective Bargaining Agreement Section 1, Paragraph 1.04.00 (Tab 12 to Plaintiffs' Appendix in opposition to Defendant's Motion for Summary Judgment) (hereinafter Plaintiff's Appendix).

In this agreement Plaintiffs also "recognize that from time to time the Government may impose various legal and/or lawful demands or obligations upon [DynCorp] and that [DynCorp] and its employees must meet such demands or obligations or comply with such rules and regulations as may be promulgated or imposed by the Government." *See id.* In effect, DynCorp, IAM and the Local Lodge recognize in the agreement that it is subordinate to federal law and DynCorp's government service contract.

Section 4 of the agreement contains a union security clause. Paragraph 4.01.00 provides that DynCorp, "insofar as permitted by State and Federal Law, shall deduct ... Union dues, initiation fees and reinstatement fees" from all bargaining unit employees. *Id.* Paragraph 4.08.00 states that "all employees ... shall as a condition of continued employment ... become and remain members in good standing in the Union within ninety-one (91) days following" their date of employment or the date of the agreement, "whichever is later." *Id.* This provision requires non-members of the union as well as members to pay agency fees as a condition of employment.

Paragraph 4.09.00 obligates DynCorp, "within ten (10) working days after receipt of notice from the Union, [to] discharge any employee who is not in good standing in the Union as required by paragraph 4.08.00." *Id.* "Any employee so discharged shall be deemed to be discharged for 'just cause'." *Id.* " 'Good standing' is defined as in compliance with standards permitted by NLRB and court decisions relating to union shop requirements." *Id.*

At present there are approximately 47 employees in the bargaining unit at DynCorp who are not members of the union. Nineteen of these non-members are classified by the union as "objectors" and approximately seventeen have refused to pay agency fees. *See* List of Bargaining Unit Employees at DynCorp, Sheppard Division (Tab 4 of Plaintiffs' Appendix). Some or all of these objectors, including Defendant Hadley, refuse to pay union agency fees based on their belief that Texas' right-to-work laws are applicable to their employment at Sheppard.

Plaintiffs filed suit seeking a declaratory judgment that these right-to-work laws are not applicable to the bargaining unit employees at Sheppard and thus the union shop security clause in the collective bargaining agreement is valid and enforceable under federal law. Defendant Hadley responds to Plaintiffs' complaint and asserts within his motion for summary judgment that the Texas right-to-work laws prohibit such "closed shop" union security agreements.

He asserts that this state statutory prohibition governs the collective bargaining agreement as it relates to him and to other DynCorp employees working at Sheppard because Texas has not ceded exclusive jurisdiction to the United States in that portion of the air force base where he and 95 percent of DynCorp's employees work. Citing applicable federal labor statutes,

Hadley states that in areas of concurrent state and federal jurisdiction Congress has expressly allowed the states to override federal laws that allow closed shop provisions in collective bargaining agreements.

Plaintiffs respond by admitting that the States are allowed to regulate the validity of union security agreements in some situations. However, they believe that the situation at bar is unique because the Dyncorp employees' work site is on a federal military facility. It is undisputed that Sheppard is an active military base entrusted with the mission of protecting vital American security interests.

Citing an overriding federal interest in regulating military service contracts and labor relations on military bases, as evidenced by applicable military regulations and federal acts, Plaintiffs affirmatively assert that federal law so pervasively governs these areas that the United States' national interests preempt Texas' laws to the extent these laws are contrary to federal law.

Acknowledging that this preemption issue is a question of first impression, Plaintiffs seek to use preemption as a defense to a grant of summary judgment for Defendant Hadley. The Court, having reviewed the affidavits, briefs, exhibits and deposition testimony and having heard oral arguments on these issues, concludes that Plaintiffs' claims of federal preemption, while persuasive from a policy standpoint, are nonetheless without support in law and do not alter the undisputed facts upon which Defendant Hadley is entitled to summary judgment.

## II. SUMMARY JUDGMENT STANDARDS

"The Court may terminate litigation by rendering a summary judgement where no genuine issue of material fact exists and the moving party is entitled to judgement as a matter of law." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir.1987) (citations omitted). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 272 (1986); Fed. R.Civ.Pro. 56(c). A material fact issue is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is one that is dispositive, or that has some legal significance. *Thatcher v. Brennan,* 657 F.Supp. 6, 7 n. 1 (S.D.Miss.1986), *aff'd,* 816 F.2d 675 (5th Cir.1987). The substantive law governing the case will identify which facts are material. *Anderson, supra,* 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 211; *Bache v. American Telephone and Telegraph Co.,* 840 F.2d 283, 287 (5th Cir.), *cert. denied,* 488 U.S. 888, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988).

"Plaintiffs must allege specific facts with sufficient particularity to meet all the elements necessary to lay a foundation for recovery, including those necessary to negate the defense" offered by a Defendant. *See Brown v. Texas A & M University,* 804 F.2d 327, 333 (5th Cir.1986). Once the party seeking summary judgment "makes the initial showing, negating any disputed, material fact, the party opposed to the motion must offer evidence reflecting the existence of one or more genuine issues of material fact." *Honore v. Douglas, supra,* 833 F.2d at 567 (citations omitted). *Accord Celotex Corp., supra,* 477 U.S. at 322–23, 106 S.Ct. at 2552, 91 L.Ed.2d at 272.

"The bare allegations of the pleadings will not suffice" to show the existence of a genuine issue of material fact. *Honore v. Douglas, supra,* 833 F.2d at 567. *Accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp., supra,* 477 U.S. at 323–25, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby, Inc., supra,* 477 U.S. at 247–48, 106 S.Ct. at 2510, 91 L.Ed.2d at 211 (emphasis in original). Thus, the nonmoving party must designate specific facts showing there is a genuine issue of material fact for trial. *Id.; Celotex Corp., supra,* 477 U.S. at 322–23, 106

S.Ct. at 2553, 91 L.Ed.2d at 274; Fed.R.Civ. Pro. 56(e). Legal conclusions and general allegations do not satisfy this burden. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195–96 (5th Cir.1986).

"Summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions." *Honore v. Douglas, supra,* 833 F.2d at 567. This Court must resolve "all factual uncertainties and mak[e] all reasonable inferences in favor of the nonmoving party." *See id. Accord Bienkowski v. American Airlines,* 851 F.2d 1503, 1504 (5th Cir.1988).

However, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby, supra,* 477 U.S. at 249, 106 S.Ct. at 2511, 91 L.Ed.2d at 212 (citations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted). *See generally,* S. Fitzwater, S. Johnson & T. Henry, *Recent Summary Judgement Jurisprudence for the Fifth Circuit Practitioner* 5 Fifth Cir.Rep. 767 (1988).

### III. DISCUSSION

When this dispute arose, Defendant Hadley and Jerry Adkins, another unit employee who contends that the union security clause is unenforceable, contacted and requested the assistance from the Attorney General of the State of Texas and the District Attorney of Wichita County, Texas. These are the state officials who are responsible for enforcing Texas' right-to-work laws at Sheppard. *See* note 15, *infra.* Both officials, despite having been contacted by Defendant Hadley and Jerry Adkins, and having been informed by counsel for IAM and Hadley of all the issues raised in this action, including these specific preemption arguments, have declined to appear in this suit.[8] The Court therefore addresses the issues without their guidance.

Because the material facts upon which the Court basis its Conclusion are undisputed, the sole issue before the Court involves application of relevant law. The party seeking summary judgment has therefore made "the initial showing, negating any disputed, material fact," and "the party opposed to the motion must offer evidence reflecting the existence of one or more genuine issues of material fact." *Honore v. Douglas, supra,* 833 F.2d at 567 (citations omitted). *Accord Celotex Corp., supra,* 477 U.S. at 322–23, 106 S.Ct. at 2552, 91 L.Ed.2d at 272.

■ There are two National Labor Relations Act (NLRA) provisions that control this dispute. The first, 29 U.S.C. § 158, states that union security agreements may be valid and enforceable in collective bargaining agreements.[9] The second, 29

---

8. At oral arguments the Court raised the issue of whether the State of Texas must be or should be informed of the preemption issues raised by Plaintiffs. The Court ordered the parties to submit briefs on this issue. Both parties responded by pointing out that there are no allegations in this suit that a Texas statute is unconstitutional, thus mandatory notice to the state is not required. *See* 28 U.S.C. § 2403(b); *Sykes v. Sweeney,* 638 F.Supp. 274, 277 (E.D.Mo.1986). The parties further agreed that Texas' joinder is not needed for just adjudication of the issues raised, *see* Fed.R.Civ.Pro. 19(a), and that intervention as of right is not required pursuant to Rule 24(a)(2) of the Federal Rules. The Court agrees. In addition, counsel for the union again informed the Texas Attorney General of the specific preemption issues raised in this suit by letter dated September 14, 1990. Again, the State chose not to appear. The Court therefore finds that while permissive intervention by the State pursuant to Rules 20(a) or 24(b) may allow the State of Texas to join in this suit, the State after notice and an opportunity to be heard has knowingly chosen not to intervene in this matter.

9. Section 158 states in relevant part:
   (a) Unfair labor practices by employer
   *It shall be an unfair labor practice for an employer—*
   \* \* \* \* \* \*
   (3) *by discrimination in regard to* hire or tenure of employment or *any term or condition of employment to encourage or discourage membership in any labor organization:* Provided, That *nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization* (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) *to require as a condition of employment membership therein* on or after the thir-

U.S.C. § 164(b), states that notwithstanding this allowance, the States may ban such union security agreements if they choose to do so.[10]  Texas has chosen to do so.  *See* Tex.Rev.Civ.Stat.Ann. art. 5154a, §§ 1, 8 & 8a (Vernon 1987)[11];  Tex.Rev.Civ.Stat.Ann. art. 5154g, §§ 1 & 4 (Vernon 1987)[12];  Tex. Rev.Civ.Stat.Ann. art. 5207a, §§ 1 through 4 (Vernon 1987)[13];  *and* Tex.Bus. & Com.

tieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, ...

29 U.S.C. § 158(a)(3) (emphasis added).

**10.**  Section 164 of Title 29, United States Code, concerns construction of the provisions of Chapter 7, dealing with Labor–Management Relations, and Subchapter II, concerning National Labor Relations, of the National Labor Relations Act (NLRA).  It states in relevant part:

(b) Agreements requiring union membership in violation of State law

Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.

Section 158, like this section, is found in Chapter 7, Subchapter II, of the NLRA.  Therefore § 164(b), being a specific provision, controls over § 158(a)(3), it being a general provision.

**11.**  Title 83 of the Texas Civil Statutes contains the Texas labor laws.  Chapter Two of this title governs Texas labor organizations, and article 5154a of this Chapter regulates labor unions.  It states in relevant part:

Sec. 1.  Because of the activities of labor unions affecting the economic conditions of the country and the State, entering as they do into practically every business and industrial enterprise, it is the sense of the Legislature that such organizations affect the public interest and are charged with a public use.  *The working man, unionist or non-unionist, must be protected.  The right to work is the right to live.*

*It is here now declared to be the policy of the State, in the exercise of its sovereign constitutional police power, to regulate the activities and affairs of labor unions, their officers, agents, organizers, and other representatives,* ...

\*　　\*　　\*　　\*　　\*　　\*

Sec. 8.  It shall be unlawful for any labor organizer, union official or officer, or member of a labor union, or their agents, to collect any fees, dues, or sum of money whatsoever, in respect to membership in a labor union, or for the privilege to work or as a permit to work, from any person, without giving such person at that time a receipt therefor signed by such labor organizer, union official or officer, or member of the labor union, or their agent, reciting that such sum of money so received is to be delivered to the labor union, and be held intact until said person has been

duly elected, and has become a bona fide voting member of said labor union.  Provided that *it shall be unlawful for any labor organizer, union official or officer, or member of a labor union, or their agents to collect any fee for the privilege to work or as a permit to work and no charge shall ever be made nor shall any fee ever be collected for the privilege to work in this State.*  Provided, however, this shall not prevent the collection of reasonable initiation fees as provided in this Act.

\*　.　\*　　\*　　\*　　\*　　\*

*Nothing hereinabove stated shall be construed to prevent a closed shop contract or other type of bargaining agreement or to limit the bargaining power of a labor union.*

Sec. 8a.  *It shall be unlawful for any labor union, any labor organizer, any officer, any agent or representative or any member of any labor union to collect, receive or demand, directly or indirectly, any fee, assessment, or sum of money whatsoever, as a work permit or as a condition for the privilege to work from any person not a member of the union;* provided, however, this shall not prevent the collection of initiation fees as above stated.

Tex.Rev.Civ.Stat.Ann. art. 5154a, §§ 1, 8 & 8a (Vernon 1987) (emphasis added).

**12.**  Article 5154g of Title 83, Chapter Two, provides for injunctive relief in the courts of the State of Texas for violations of Texas right-to-work laws.  It states, in relevant part:

Sec. 1.  It is hereby declared to be the public policy of the State of Texas that the right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization and that in the exercise of such rights all persons shall be free from threats, force, intimidation or coercion.

\*　　\*　　\*　　\*　　\*　　\*

Sec. 4.  Any person, organization or association who violates any of the provisions of this Act shall be liable to the person suffering therefrom for all resulting damages, ... and the District Courts of this State shall grant injunctive relief when a violation of this Act is made to appear.

Tex.Rev.Civ.Stat.Ann. art. 5154g, §§ 1 & 4 (Vernon 1987).

**13.**  Article 5207a is contained in Title 83, regulating labor relations in Texas, and in Chapter Twelve, dealing with restrictions on labor.  It states, in relevant part:

Sec. 1.  The inherent right of a person to work and bargain freely with his employer, individually or collectively, for terms and conditions of his employment shall not be

Code Ann. § 15.05(e) (Vernon 1987).[14]

The Texas right-to-work statutes provide that the Texas Attorney General or the local District or County Attorney may bring suit to enforce these rights. Tex. Rev.Civ.Stat.Ann. art. 5154g, § 5 (Vernon 1987).[15] The rights protected by the Texas right-to-work statutes are also privately enforceable. *See Lunsford v. City of Bryan,* 156 Tex. 520, 297 S.W.2d 115 (1957) (suit by employee); *Texas State Fed. of Labor v. Brown & Root, Inc.,* 246 S.W.2d 938 (Tex. Civ.App.—Austin 1952, writ ref'd n.r.e.) (suit by employer). In his motion, Defendant Hadley asserts this right to work on his own behalf.

It is undisputed that the work site where 95% of the DynCorp employees at Sheppard are located, and the location wherein Defendant Hadley spends 98% of his working hours, is on that portion of Sheppard that is under the concurrent jurisdiction of Texas and the United States.[16] Because of

this fact, it can not be disputed that federal law allows the Texas right-to-work statutes to prohibit application of the closed shop requirement contained in the collective bargaining agreement between IAM, its Local Lodge and Dyncorp to Defendant Hadley. *See Oil, Chemical and Atomic Workers v. Mobil Oil Corp.,* 426 U.S. 407, 417–18, 96 S.Ct. 2140, 2145–46, 48 L.Ed.2d 736 (1976) (it is employee's predominate job situs, rather than generalized weighing of factors or place of hiring, that triggers operation of federal statutory provisions allowing states to enact right-to-work laws); *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 102–03, 84 S.Ct. 219, 222, 11 L.Ed.2d 179 (1963) (if employee's job situs is within legislative jurisdiction of a state having right-to-work laws, employee is protected under state law and cannot be required to submit to contrary union-security agreement requirements). *Cf. Vincent v. General Dynamics Corp.,* 427 F.Supp. 786 (N.D.Tex.1977)

denied or infringed by law, or by any organization of whatever nature.

Sec. 2. *No person shall be denied employment on account of membership or nonmembership in a labor union.*

Sec. 3. *Any contract which requires or prescribes that employees* or applicants for employment in order to work for an employer *shall or shall not be or remain members of a labor union, shall be null and void and against public policy.* The provisions of this Section shall not apply to any contract or contracts heretofore executed but shall apply to any renewal or extension of any existing contract and to any new agreement or contract executed after the effective date of this Act.

Sec. 4. Definitions. By the term "labor union" as used in this Act shall mean every association, group, union, lodge, local, branch or subordinate organization of any union of working men, incorporated or unincorporated, organized and existing for the purpose of protecting themselves and improving their working conditions, wages, or employment relationships in any manner, but shall not include associations or organizations not commonly regarded as labor unions.

(emphasis added). The provisions of this article became effective prior to the contract at issue, being enacted in 1947.

14. Title Two of the Texas Business and Commerce Code governs competition and trade practices in Texas. Chapter 15 makes illegal certain monopolies, trusts and conspiracies in restraint of trade. Section 15.05 is found in Subchapter A, stating the general provisions and

prohibited restraints. This section states in relevant part:

§ 15.05. Unlawful Practices

(e) It is unlawful for an employer and a labor union or other organization to agree or combine so that:

(1) a person is denied the right to work for an employer because of membership or nonmembership in the labor union or other organization; or

(2) membership or nonmembership in the labor union or other organization is made a condition of obtaining or keeping a job with the employer.

Tex.Bus. & Com.Code Ann. § 15.05(e) (Vernon 1987).

15. Section 5 states in relevant part:

The State of Texas, through its Attorney General or any District or County Attorney, may institute suit in the District Court to enjoin any person or persons, association of persons, labor union or labor organization from violating any provision of this Act.

16. The following facts are undisputed. Sheppard Air Force Base is located on approximately 4,200 acres of land. Of this, approximately 2,200 acres are under exclusive federal jurisdiction, having been ceded by the State of Texas to the United States by four deeds of cession, duly recorded, perfected and accepted. On the remaining 2,000 acres the State and federal governments have concurrent civil jurisdiction. It is on this portion of Sheppard that 95% of the DynCorp employees work and on which 98% of Hadley's work time is spent.

(where civil jurisdiction over military base was ceded exclusively to the federal government prior to enactment of state right-to-work laws, such laws can not be utilized to bar enforcement of terms of subsequent union agreements because such state laws are not part of the civil law governing within the federal enclave).

This would end the matter, if it were not for the assertion made by the Plaintiffs that federal law preempts all incompatible state labor laws on Air Force bases regardless of whether the employee's primary work site is on or off the federal enclave portion of the military facility. Despite persuasive policy arguments to the contrary, the Court concludes that there is no preemption of Texas' right-to-work laws in this case.[17]

Preemption doctrines come into play when two sovereigns attempt to regulate the same conduct. Federal law may preempt state law in any of three ways: first, in enacting federal law, Congress may explicitly define extent to which it intends to preempt state law, secondly, even in absence of express preemptive language, Congress may indicate an intent to occupy an entire field of regulation, in which case the states must leave all regulatory activity in that area to federal government and, finally, if Congress has not displaced state regulation entirely, it may nonetheless preempt state law to extent that state law actually conflicts with federal law. *See Michigan Canners and Freezers Ass'n, Inc. v. Agricultural Marketing and Bargaining Bd.*, 467 U.S. 461, 469,

104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984). Such a conflict arises when compliance with both state and federal law is impossible or when state law stands as an obstacle to accomplishment and execution of the full purposes and objectives of Congress. *See id.*

In this case, the basis for preemption is that Congress, while not displacing state regulation entirely, has preempted state law to the extent that it conflicts with federal law and "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Thus it is the third type of preemption that Plaintiffs assert in this suit.

However, this doctrine is inapplicable under the facts of this action because here the federal government has expressly preserved state right-to-work laws pursuant to 29 U.S.C. § 164(b). Furthermore, neither sovereign has expressed any intent that 29 U.S.C. § 158 be allowed to preempt these state labor laws. Nor has the United States expressed an intent that federal law otherwise preempt these Texas laws.

■ There are three sources that should be looked to for federal expressions of intent to preempt state laws: first, the express directives of the Congress as stated in legislative acts and statutes, secondly, in properly promulgated regulations by the appropriate federal agencies,[18] and third, in applicable military rules and regulations.[19]

---

**17.** The collective bargaining agreement at issue provides no evidence disputing this conclusion. Paragraph 4.01.00 provides that DynCorp, "insofar as permitted by State and Federal Law, shall deduct ... Union dues, initiation fees and reinstatement fees" from all bargaining unit employees. The fact that state law does not permit "closed shop" agreements is acknowledged by Plaintiffs.

**18.** As United States Supreme Court has stated,

in a situation where state law is claimed to be pre-empted by federal regulation, a "narrow focus on Congress' intent to supersede state law [is] misdirected," for "[a] pre-emptive regulation's force does not depend on express congressional authorization to displace state law." *Fidelity Federal Sav. & Loan Assn. v. De*

la Cuesta, 458 U.S. 141, 154, 102 S.Ct. 3014, 3023, 73 L.Ed.2d 664 (1982). Instead, the correct focus is on the federal agency that seeks to displace state law and on the proper bounds of its lawful authority to undertake such action. The statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof.

*City of New York v. F.C.C.*, 486 U.S. 57, 63–64, 108 S.Ct. 1637, 1642–43, 100 L.Ed.2d 48 (1988). The federal agency that controls labor relations on Air Force bases is the Department of Labor. *See* Air Force Regulation 79–1, § C(11)(a) and § F(20)(b), note 19, *infra*.

**19.** Plaintiffs cite Air Force Regulation 79–1 for the proposition that military regulations express an intent by the military services to preempt

Like the federal act involved in *Michigan Canners*, the Service Contracts Act "contains no pre-emptive language; nor does it reflect a congressional intent to occupy the entire field of" labor law. *Michigan Canners, supra*, 467 U.S. at 469, 104 S.Ct. at 2523.[20]

Likewise, Plaintiffs do not cite the Court to any NLRB or other Department of Labor pronouncements indicating an intent to preempt Texas' right-to-work laws under the facts of this case. Indeed, as Defendant Hadley points out, there are none. While statutorily authorized regulations of federal agencies will preempt any state or local law that conflicts with these regulations or frustrates the purposes thereof,

the Court has found no federal agency rules or regulations that purport to regulate or forbid the banning of union security agreements by the State of Texas at Sheppard.[21]

Nor do the applicable air force regulations cited by Plaintiffs contain preemptive language. In fact, Air Force Pamphlet 110-3, cited by Plaintiffs, establishes the opposite intent by the Air Force.[22] In short, Plaintiffs cite nothing showing the intent of Congress, the federal agencies charged with overseeing federal service contracts and labor agreements, or the military services to seek preemption of state right-to-work laws in factual situations similar to that now before the Court.[23]

---

Texas right-to-work laws. The preamble to this regulation states:

This regulation outlines Air Force policies and procedures required to protect Air Force interests in contracting and operational matters involving contractor industrial labor relations activities of Air Force contractors and contractor employees. It applies Air Force-wide to commanders, contracting officials, individuals involved directly or indirectly in industrial labor relations matters, labor law, or contractor equal employment opportunity programs. It also applies to Air National Guard and the US Air Force Reserves.

Section A of AF Regulation 79-1 outlines the background policy behind this regulation. Section A(2)(d) states in part:

(d) The collective bargaining rights and obligations of employers, employees, and employee representatives are established by law. Air Force personnel:

(1) Must not interfere with or try to influence collective bargaining or labor disputes between contractors and labor union representatives representing contractor employees.

(2) Must cooperate with federal and state agencies that have statutory or assigned responsibilities relating to industrial labor relations activities in Air Force operations.

Section C of 79-1 regulates contract labor standards application, administration and enforcement. Section C(11)(a) states:

(a) The Department of Labor is responsible for monitoring, investigating, and enforcing the Service Contract Act of 1965 and the Walsh-Healey Public Contracts Act. ...

Finally, Section F of 79-1 regulates the admission of labor union representatives onto Air Force installations. Section F(20) states, in relevant part:

(b) Union bargaining unit certification or decertification elections may be held on Air Force installations under the supervision of the National Labor Relations Board (NLRB).
 * * * * * *
(d) No union activity, except as provided in this regulation, is permitted on Air Force

owned or controlled property. This prohibition includes internal union elections at all times.

20. Plaintiffs cite 29 C.F.R. § 4.168 for the proposition that federal law governing deductions from wages of employees of federal service contractors, in conjunction with the Service Contract Act of 1965, preempts state law with respect to union security agreements. However, while this Act and regulation do govern certain aspects of federal service contracts, nothing in these cited materials clearly indicates the intent of Congress or any federal agency to preempt Texas' right-to-work laws.

21. Plaintiffs cite 32 C.F.R. Part 801 for the proposition that federal regulations so pervasively regulate labor relations that Texas' right-to-work laws are pre-empted by federal labor regulations. However, nothing in Part 801 expresses such an intent.

22. Chapter 15-6 of this pamphlet states:

a. General. When the State has not ousted itself of jurisdiction by ceding or consenting to the exercise of exclusive civil jurisdiction by the United States, there is usually little or no difficulty encountered in ascertaining the civil law applicable or the forum available for enforcement thereof. The State laws and courts remain available to the same extent as they were prior to the cession of jurisdiction, and no vacuum of law or available forum occurs.

23. In fact, the military command structure at Sheppard has clearly expressed the Air Force's neutral position towards labor disputes. Lieutenant Colonel John L. Tison, Deputy Staff Judge Advocate, is head of the Civil Law and Claims Divisions at Sheppard Air Force Base. At deposition, he stated the following:

In spite of suggestions to the contrary made by Plaintiffs, this is not a case involving a railroad or controlled by the Federal Railway Labor Act, 45 U.S.C. § 152 (FRLA). *Cf. International Ass'n of Machinists v. Sandsberry*, 277 S.W.2d 776 (Tex.Civ.App.—Amarillo 1954), *aff'd*, 156 Tex. 340, 295 S.W.2d 412 (1956), *cert. denied*, 353 U.S. 918, 77 S.Ct. 669, 1 L.Ed.2d 665 (1957) (provisions of FRLA permitting interstate carriers and labor organizations to enter into union shop agreements, notwithstanding any other federal or state statute, are valid and controlling in the field of labor relations between unions and railroads operating in interstate commerce and such provisions supersede any state legislation in the labor field contrary to the FRLA). There are no criminal issues involved here.[24]

This is a labor relations case in which Plaintiff seek a declaratory judgment concerning the validity of a union shop provision contained in a collective bargaining agreement. Such agreements are specifically regulated by the NLRA.[25] Thus the NLRA is the "primary" regulation governing union security clauses in collective bargaining agreements.

When considering multiple regulations by the same sovereign, the aim of the Court is to construe the various regulations in a way that permits all of them to be enforced. If possible, all other rules and regulations should also be construed to conform with whatever is permitted or prohibited by the primary regulation. In this suit, it is possible to do so. *Accord Singleton v. International Ass'n of Machinists*, 240 Va. 403, 397 S.E.2d 856 (1990) (Virginia's right-to-work law prohibiting union security agreements, rather than LMRA, which permits such agreements, controls employment relationships between employees and private employers at airport facility located on federally owned enclave, where federal law gave state concurrent police-power jurisdiction and Congress has indicated its retention of fee simple title should not affect choice-of-law issue).

## IV. CONCLUSION

The party seeking summary judgment has made an initial showing negating all disputed, material facts. Therefore the

---

Plaintiff's Counsel Tanner: What authorities and responsibilities, if any, would the base commander have, in the event, say, of a labor dispute between DynCorp and the Machinists Union, where the machinists unit might want to picket on the base?

Lt. Colonel Tison: We have Air Force regulation, which is 79–1, which sets out the requirements involving labor disputes. The basic position of the Air Force is that we will remain neutral and will act only to quell breaches of the peace. Specifically, in reference to picketing, the regulation sets out guidance. We can technically allow picketing on the base. However, to my knowledge, we would not recommend it, nor do I personally know of bases where picketing has been allowed on base....

Plaintiff's Counsel Tanner: Does the base commander retain the authority or have the authority to make that decision, as to whether to permit picketing or handbilling?

Lt. Colonel Tison: Subject to federal or state court order. Otherwise, he would.

**24.** No party seeks enforcement of criminal penalties for violation of Texas right-to-work laws. *Cf. Vincent, supra,* 427 F.Supp. at 799–801 (the Federal Assimilative Crimes Act, 18 U.S.C. § 13, does not, for purposes of federal enclaves with-

in Texas, adopt Texas law that makes union security agreements illegal).

**25.** In fact, Plaintiffs concede this point. In a letter to the Texas Attorney General, dated September 14, 1990, counsel for Plaintiffs states:

Labor relations between DynCorp and the IAM are governed by the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.,* 32 C.F.R. Part 801, and Air Force Regulation 79–1. Section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), expressly authorizes employers and exclusive representatives to negotiate union security agreements which require all employees in the unit to provide financial support to the exclusive representative. As you know, Section 14(b) authorizes states to enact laws prohibiting union security agreements and Texas, of course, has enacted such laws. (cites omitted).

Also, Paragraph 4.09.00 of the collective bargaining agreement, which requires DynCorp to discharge any employee who is not in good standing in the Union, states that " 'good standing' is defined as in compliance with standards permitted by NLRB and court decisions relating to union shop requirements." Clearly, the provisions of the NLRA control the outcome of this action, given no contrary indications of preemption in 32 C.F.R. Part 801 or AF Reg. 79–1.

moving party is entitled to judgment as a matter of law.

Defendant Hadley's Motion for Summary Judgment is granted.

It is SO ORDERED.